COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Felton and McClanahan
Argued at Salem, Virginia


VIRGINIA DEPARTMENT OF CORRECTIONS

                                                        OPINION BY
v.      Record No. 0634-05-3                   JUDGE ROBERT J. HUMPHREYS
                                                      DECEMBER 20, 2005
JEFFREY COMPTON


                    FROM THE CIRCUIT COURT OF WISE COUNTY
                              John C. Kilgore, Judge

            Banci E. Tewolde (Joel C. Hoppe, Assistant Attorney General,
            on briefs), for appellant.

            Timothy W. McAfee for appellee.


        The Virginia Department of Corrections ("VDOC") appeals pursuant to the State

Grievance Procedure, Code §§ 2.2-3000 through 2.2-3008, from the circuit court's reversal of an

order terminating the employment of appellee Jeffrey Compton ("Compton"). Compton's

termination for cause was based upon conduct unbecoming a corrections lieutenant ("conduct

unbecoming") as well as a criminal conviction that was ultimately vacated following a *de novo*

appeal to the circuit court. VDOC contends that, in reversing the termination order, the circuit

court erroneously held that: (1) the underlying disciplinary notice was based solely on

Compton's criminal conviction for assault; (2) the hearing officer usurped the authority of

VDOC by upholding the disciplinary charge on the basis of conduct unbecoming; and (3) the

disciplinary notice did not provide sufficient notice that the termination was based on Compton's

criminal conviction as well as conduct unbecoming. For the reasons that follow, we agree that

the circuit court erred and, therefore, reverse the judgment below and reinstate the termination for cause.

## I. BACKGROUND

The relevant facts are not in dispute. Compton, a corrections lieutenant, routinely worked with Kevin Stapleton, another corrections officer, at a state correctional facility. On January 18, 2004, Compton encountered Stapleton pumping gas at a convenience store. Compton approached Stapleton and called out, "f---- you, Stapleton, you f---ing snitch."[1] Stapleton responded that he "didn't want no trouble or nothing." Compton then told Stapleton to "bring your snitching ass over here because I've got something for you." There was no physical contact between the men, however, and the altercation ended when Compton drove away from the area. At the time of the incident, Compton was Stapleton's supervisor.

Stapleton reported the altercation to the prison warden and filed a criminal complaint for the verbal assault against Compton. On April 27, 2004, Compton was convicted of assault in the general district court. Compton then appealed his conviction. However, on May 4, 2004—prior to the resolution of Compton's appeal—VDOC issued a written notice and "Group III" termination,[2] describing the alleged offense as follows:

> Violation of DHRM Policy 1.60 and DOC Procedure 5-10
> Standards of Conduct, criminal convictions for illegal conduct
> occurring off the job that clearly are related to job performance or

---

[1] Compton apparently believed that Stapleton had reported him to the administration for having inappropriate sexual relations with a female co-worker while on duty at the prison.

[2] Chapter 5 of the Department of Corrections Procedural Manual ("DOC Human Resources Manual") divides the offenses that may justify termination into three categories. "Group I" offenses include those "types of behavior least severe in nature but which require correction in the interest of maintaining a productive and well-managed work force." DOC Human Resources Manual § 5-10.15(A). "Group II" offenses include "acts and behavior that are more severe in nature and are such that an accumulation of two Group II offenses normally should warrant removal." Id. § 5-10.16. "Group III" offenses include "acts and behavior of such a serious nature that a first occurrence normally should warrant removal." Id. § 5-10.17.

are of such a nature that to continue you in your position could constitute negligence in regard to the agency's duties to the public or to other state employees and conduct unbecoming a Corrections Lieutenant which undermines your effectiveness as a supervisor and a law enforcement officer to wit: On 4/27/04, you were found guilty as charged to verbal assault of Kevin Stapleton on or about 1/18/04. This type of behavior will not be tolerated.

Three weeks after Compton's termination, the circuit court reversed and vacated Compton's conviction for assault. Thus, on June 1, 2004, Compton filed a grievance contesting his termination, arguing that he should be reinstated because "[t]he guilty conviction was appealed and I was found not guilty." The prison warden denied the request, reasoning that, "[a]lthough the court decision was overturned during appeal, the unbecoming conduct outlined in the Written Notice toward a subordinate employee cannot be tolerated." Compton then appealed to the head of the agency, who responded that Compton was "removed for a criminal conviction *and* for conduct unbecoming a Corrections Lieutenant" and that, "[a]lthough [his] criminal conviction was overturned during appeal[,] [his] unbecoming conduct clearly undermines [his] effectiveness as a supervisor." (Emphasis added). Thus, the agency head "upheld" Compton's "termination for this offense."

Compton then requested a formal hearing before a grievance officer. By opinion dated August 26, 2004, the hearing officer upheld the termination. The hearing officer reasoned that the written notice of termination stated two grounds for the disciplinary charge: (1) the criminal conviction, and (2) conduct unbecoming a corrections lieutenant. Although acknowledging that the criminal conviction was no longer an issue, the hearing officer reasoned that the termination was justified on the charge of conduct unbecoming a corrections official. The hearing officer noted that the charge in the written notice was similar to another Group III charge, specifically, "threatening or coercing persons employed by a state agency." Although that charge was not listed in the notice of termination, the hearing officer concluded that verbal assault of a

co-worker falls within the scope of a Group III offense and, thus, upheld the Group III written notice and termination.

Compton appealed the hearing officer's decision to the circuit court. By order dated February 17, 2005, the circuit court vacated the hearing officer's decision, finding the decision "to be contrary to the law in two interrelated respects." First, the circuit court stated that it "disagree[d] with the Hearing Officer's legal conclusion that the Notice advised Compton of his termination based on conduct unbecoming," reasoning that the criminal conviction "is the stated basis for both violations" listed in the notice of termination. Because the notice of termination did not provide sufficient notice of a charge of conduct unbecoming, the circuit court concluded that "the hearing Officer's decision to uphold the termination on grounds other than the criminal conviction was without sufficient notice to the petitioner, and therefore contrary to law."

Second, the circuit court held that the hearing officer lacked "the authority to find alternative grounds for dismissal on which the Agency 'could have' relied to uphold a termination decision originally made by the Agency based on grounds which no longer exist." Thus, the circuit court concluded that "the portion of the Hearing Officer's decision upholding termination of the petitioner which is based upon conduct unbecoming is contrary to the law in that it is lacking the statutorily required notice to petitioner and exceeds the authority granted to the Hearing Officer pursuant to Virginia Code § 2.2-3005."

VDOC appeals.

## II. MOTION TO DISMISS

Initially, Compton has moved to dismiss the appeal, contending that VDOC's appeal is procedurally barred. Specifically, Compton argues that VDOC violated Rules 5A:6 and 5A:8 because: (1) "[t]he Notice of Appeal was defective in that it did not contain a statement certifying that a copy of the transcript of the hearings will be filed or that a Statement of Facts

- 4 -

surrounding the hearings will be filed," (2) "VDOC failed to post an appeal bond," (3) VDOC did not give notice "of a filing of the transcript of the Grievance Hearing to Counsel for the Appellee," and (4) "[t]here is no indication that the Transcript of the Grievance Hearing was filed within the 60 day requirement of Rule 5A:8." For the reasons that follow, we hold that VDOC's appeal is not procedurally barred and, therefore, deny the motion to dismiss.

A.

The grievance hearing, conducted on August 23, 2004, was recorded with an audiocassette tape recorder. After Compton appealed the hearing officer's decision, VDOC compiled a transcript of the grievance hearing and sent a copy of the transcript, along with the cassette tapes, to the circuit court. The circuit court, however, noted that the transcript was "extremely deficient" because it was "plagued with significant gaps, numerous instances of inaudible responses, and various other omissions." In resolving the appeal, the circuit court therefore "relie[d] upon the decision of the Hearing Officer and the exhibits to the hearing," rather than the transcript itself.

In the notice of appeal filed with the circuit court, VDOC stated that "[a] transcript of the grievance hearing will be filed." VDOC then obtained a new, more complete transcript of the grievance hearing and designated that transcript for inclusion in the appendix filed on appeal. The updated transcript, however, was never filed with the circuit court and, thus, is not part of the lower court's record.

It is not clear whether the "transcript" mentioned in VDOC's notice of appeal is intended to reference the original, incomplete transcript of the grievance hearing, or the second, more complete transcript of the hearing. Nor has Compton argued with any specificity whether he is contending that VDOC's appeal is barred because VDOC failed to follow the proper procedures when filing the first transcript with the circuit court, whether he is contending that VDOC's

- 5 -

appeal is barred because VDOC failed to follow the proper procedures when "filing" the second transcript during its appeal to this Court, or whether he is contending that VDOC's appeal is barred because VDOC did not file a transcript of the appellate proceedings conducted before the circuit court. However, in Part II(B)(3), *infra*, we address each of these arguments in turn.

B.

The procedures to be followed when appealing a decision pursuant to the State Grievance Procedure are established almost entirely by statute.[3] As pertinent here, Code § 2.2-3006 provides that,

> Within 30 days of a final decision, a party may appeal on the grounds that the determination is contradictory to law by filing a notice of appeal with the clerk of the circuit court in the jurisdiction in which the grievance arose. . . . After a notice of appeal has been filed by either party, the agency shall then transmit a copy of the grievance record to the clerk of the court. . . . Within 30 days of receipt of the grievance record, the court, sitting without a jury, shall hear the appeal on the record. The court may affirm the decision or may reverse or modify the decision.

Code § 2.2-3006(B).[4]

---

[3] This is in contrast to appeals brought pursuant to the Administrative Process Act, Code § 2.2-4001 *et seq.* Specifically, Part 2A of the Rules of the Supreme Court of Virginia details the procedure for appealing a final administrative decision to the circuit court. However, there is no equivalent set of rules governing appeals brought under the State Grievance Procedure.

[4] We note that Code § 2.2-3007 provides alternative appellate procedures for VDOC employees who are terminated because of, *inter alia*, a criminal conviction. Specifically, Code § 2.2-3007 provides that, "[i]f no resolution is reached by the conclusion of the last grievance step, the employee may advance the grievance to the circuit court of the jurisdiction in which the grievance occurred *for a de novo hearing on the merits*." Code § 2.2-3007(B) (emphasis added). This statute also gives the trial court the authority to receive additional evidence and to "refer the matter to a commissioner in chancery to take such evidence as may be proper and to make a report to the court." Id. However, because the circuit court did not conduct a *de novo* hearing on the merits, deferring instead to the hearing officer's findings of fact, the court apparently treated Compton's appeal as brought pursuant to Code § 2.2-3006 rather than Code § 2.2-3007. The propriety of that decision is not at issue on appeal.

Once the circuit court has issued a final decision affirming, reversing, or modifying the hearing officer's decision, the aggrieved party has an appeal of right to the Virginia Court of Appeals. See Code § 17.1-405(1)(ii) (creating an appeal of right from "[a]ny final decision of a circuit court on appeal from . . . a grievance hearing decision issued pursuant to § 2.2-3005"). The State Grievance Procedure, however, does not set forth the procedural steps to be followed when appealing the circuit court's decision to this Court. To ascertain the applicable procedural rules, we must therefore consider the rules contained in Part 5A of the Rules of the Supreme Court of Virginia.

According to Rule 5A:16, titled "Perfecting an Appeal," the appellant in an appeal of right must file a timely notice of appeal "pursuant to Rule 5A:6." Rule 5A:16(a); see also Code § 17.1-408 (providing that a "notice of appeal to the Court of Appeals shall be filed in every case within the court's appellate jurisdiction"). Rule 5A:6 provides, in pertinent part, that

> No appeal shall be allowed unless, within 30 days after entry of final judgment or other appealable order or decree, counsel files with the clerk of the trial court a notice of appeal, and at the same time mails or delivers a copy of such notice to all opposing counsel and the clerk of the Court of Appeals.

Rule 5A:6(a); see also Code § 8.01-675.3 ("[A] notice of appeal to the Court of Appeals in any case within the jurisdiction of the court shall be filed within 30 days from the date of any final judgment order, decree or conviction."). Moreover, the notice of appeal "shall contain a statement whether any transcript or statement of facts, testimony, and other incidents of the case will be filed," Rule 5A:6(b), and "shall include" a certification that, *inter alia*, "in the event a transcript is to be filed[,] a copy of the transcript has been ordered from the court reporter who reported the case." Rule 5A:6(d)(4).

According to Rule 5A:16, the appellant in an appeal of right must also "simultaneously file in the trial court an appeal bond in compliance with Code § 8.01-676.1." Rule 5A:16(a).

- 7 -

Rule 5A:16 does not, however, require an appellant in an appeal of right to file in this Court a transcript of any appellate proceedings that were conducted before the circuit court. Nor does the rule authorize or otherwise describe a process that may be followed when seeking to make a previously omitted transcript of an administrative or grievance hearing part of the record on appeal to this Court.

Accordingly, to perfect its grievance appeal from the circuit court, VDOC was required: (1) to file a notice of appeal "pursuant to Rule 5A:6," and (2) to file an appeal bond "in compliance with Code § 8.01-676.1." Rule 5A:16(a). Because, as discussed below, VDOC successfully completed these two steps, it properly perfected its appeal to this Court.

### 1. The Notice of Appeal

Compton does not contest the timeliness of VDOC's notice of appeal, arguing instead that the notice of appeal lacks the certification required by Rule 5A:6. Specifically, although the notice of appeal states that "[a] transcript of the grievance hearing will be filed," the attached "Certificate" does not certify that "a copy of the transcript [from the grievance hearing] has been ordered from the court reporter who reported the case."

We hold, however, that the certification appended to VDOC's notice of appeal is sufficient for purposes of Rule 5A:6. As VDOC notes, the grievance hearing was not attended by a "court reporter," but was, instead, recorded by the parties via an audiocassette tape recorder. VDOC transcribed these audiocassette tapes and presented the tapes and accompanying transcript to the circuit court. The circuit court then made the tapes and transcript part of the court record. Accordingly, VDOC could not certify that "a copy of the transcript [from the grievance hearing] has been ordered from the court reporter who reported the case" because: (1) there was, in fact, no "court reporter" from whom the transcript could be ordered, and (2) the tapes and a transcript of those tapes were already part of the circuit court record.

Because the certification appended to VDOC's notice of appeal is sufficient for purposes of Rules 5A:6 and 5A:16, we hold that the notice of appeal complies with the applicable procedural requirements.

## 2. The Appeal Bond

Compton also contends that VDOC's appeal is barred because it did not post the necessary appeal bond. We disagree.

Rule 5A:16 requires an appellant in an appeal of right to file "an appeal bond in compliance with Code § 8.01-676.1." Code § 8.01-676.1 provides, however, that "[w]hen an appeal is proper . . . to protect the interest of the Commonwealth . . . no security for appeal shall be required." Code § 8.01-676.1(M). Because VDOC is an administrative subdivision of the Commonwealth, it falls within the statutory exclusion and, therefore, is not required to post an appeal bond. See Code § 53.1-8 ("There shall be *in the executive department* a Department of Corrections responsible to the Governor." (emphasis added)).

## 3. The "Filing" of the Grievance Transcript

Compton also contends that VDOC's appeal is procedurally barred because VDOC did not give notice "of a filing of the transcript of the Grievance Hearing," nor did it file the "transcripts" of "the hearings" within sixty days after entry of the final judgment. Compton concludes that VDOC's appeal is therefore barred by Rule 5A:8. We disagree.

As noted above, it is not clear from his brief whether Compton is arguing that VDOC's appeal is barred because VDOC failed to follow the proper procedures when filing the first transcript with the circuit court, whether he is arguing that VDOC's appeal is barred because VDOC failed to follow the proper procedures when "filing" the second transcript during its appeal to this Court, or whether he is arguing that the appeal is barred because VDOC did not

- 9 -

file a transcript of the appellate proceedings conducted before the circuit court. Regardless, none of these arguments has any merit.

First, to the extent that Compton is challenging the filing of the first transcript with the circuit court, we hold that VDOC followed the procedures set forth in the State Grievance Procedure. Specifically, Code § 2.2-3006 provides that, after a notice of appeal has been filed, "the agency shall transmit a copy of the grievance record to the clerk of the court." Code § 2.2-3006(B). The statute does not contain any notification or timeliness requirements. By sending the circuit court the cassette tapes and a transcript of those tapes, both of which were part of the grievance record, VDOC complied with Code § 2.2-3006 and, therefore, properly made the first transcript part of the circuit court record. And, once the first transcript was part of the circuit court record, VDOC did not need to take any further steps to "file" the transcript for purposes of appeal.

Second, to the extent that Compton is arguing that VDOC violated Rule 5A:8 during the "filing" of the second transcript, we note that Rule 5A:8—which governs the procedure for making a trial transcript or written statement of facts part of the record on appeal—is inapplicable under the circumstances of this case. Specifically, Rules 5A:6 through 5A:10 of the Rules of the Supreme Court of Virginia, designated as subsection "C" of Part 5A of the Rules of the Supreme Court of Virginia, follow the subtitle, "Procedure for Filing an Appeal in All Cases from the *Trial* Court." (Emphasis added). Thus, unless incorporated by reference into an applicable procedural rule, Rule 5A:8 does not apply to administrative or grievance appeals in which the circuit court functions as an appellate court rather than as a trial court. But see Gordon

- 10 -

v. Allen, 24 Va. App. 272, 482 S.E.2d 66 (1997) (assuming, without discussion, that Rule 5A:8 applied in the context of an administrative appeal).[5]

Unlike Rule 5A:6, Rule 5A:8 is not incorporated by reference into Rule 5A:16 or any other general rule regarding the appropriate procedures following perfection of an appeal from the circuit court.[6] Accordingly, VDOC was not required to follow the procedures laid out in Rule 5A:8 when seeking to make the second grievance hearing transcript part of the record on appeal. VDOC's failure to follow those procedures, therefore, cannot operate as a procedural bar to this appeal.[7] Regardless, we further hold that, because the second transcript was never presented to the circuit court, this Court may not consider its contents even though it was included in the appendix filed on appeal. See, e.g., Washington, Alexandria & Georgetown R. R. Co. v. Alexandria & Washington R. R. Co., 60 Va. (19 Gratt.) 592, 610 (1870) ("[O]n appeal the part[ies] [are] bound by the record as it is.").[8]

---

[5] We note, however, that in appeals brought pursuant to Code § 2.2-3007—rather than § 2.2-3006—the circuit court operates as a trial court because it conducts a *de novo* hearing on the merits. See note 3, supra.

[6] Rule 5A:25 governs the procedures for making documents part of the appendix filed on appeal. Compton does not contend that VDOC failed to comply with this rule, focusing instead on VDOC's alleged failure to follow the procedures laid out in Rule 5A:8.

[7] Even if Rule 5A:8 were made applicable to appeals brought pursuant to the State Grievance Procedure, we note that the proper remedy for failure to comply with this rule is to exclude the transcript or to default an assignment of error, not to automatically dismiss the appeal in its entirety. See Rule 5A:8 (providing that "[a]ny failure to file the notice required by this Rule will result in the affected transcripts being stricken from the record on appeal" and that, "[w]hen the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission shall not be considered"); see also Turner v. Commonwealth, 2 Va. App. 96, 99, 341 S.E.2d 400, 402 (1986) (holding that the appellant's failure to comply with Rule 5A:8 "does nothing to diminish our jurisdiction").

[8] We note, however, that because the audiocassette tapes are part of the circuit court record, this Court may exercise its discretion to consider the contents of the tapes themselves

- 11 -

Third, to the extent that Compton is arguing that the appeal is barred because VDOC did not file a transcript of the appellate proceedings conducted before the circuit court, we hold that no transcript of those proceedings is necessary for resolution of this appeal. As discussed above, there is no statute or rule requiring an appellant to file a transcript of appellate proceedings conducted before the circuit court, nor is there a statute or rule that designates a procedure to be followed if an appellant wishes to make an appellate transcript from a lower court part of the record on appeal. Moreover, a transcript of the appellate proceedings before the circuit court (which were not recorded by a court reporter) is unnecessary on appeal. Because the circuit court was functioning as an appellate rather than fact-finding tribunal, the circuit court "was limited to considering the parties' legal arguments based upon the agency record." Gordon, 24 Va. App. at 277, 482 S.E.2d at 68; see also Code § 2.2-3006 (providing that the circuit court "shall hear the appeal *on the record*" (emphasis added)). And, although "our consideration of the [issues presented on appeal] might have been aided by a review of the [circuit court proceedings]," the written record, which encompasses "the parties' pre-hearing briefs, the trial court's letter opinion, [] the agency record," and the hearing officer's written decision, "provides a sufficient record for our consideration of this appeal." Gordon, 24 Va. App. at 277, 482 S.E.2d at 68.

Accordingly, because VDOC complied with Code § 8.01-676.1 and all applicable provisions of Rule 5A:16, we hold that VDOC perfected its appeal to this Court. We therefore deny Compton's motion to dismiss the appeal.

---

when resolving the merits of this appeal. See Rule 5A:25(h) (providing that this Court "may" consider parts of the record other than the appendix when ruling on the merits of an appeal).

III. MERITS OF THE APPEAL

On appeal, VDOC argues that the circuit court erroneously determined that the Notice of Termination failed to give adequate notice that Compton's termination was based upon conduct unbecoming as well as the fact of his criminal conviction. VDOC further argues that the circuit court erred in holding that the hearing officer exceeded the scope of his statutory authority. For the reasons that follow, we agree that the Notice of Termination gave sufficient notice that Compton's termination was based, in part, on conduct unbecoming a corrections lieutenant, and we further hold that the hearing officer did not exceed the scope of his statutory authority. Accordingly, we reverse the judgment of the circuit court and reinstate Compton's termination.

On appeal from a decision rendered pursuant to the State Grievance Procedure, the circuit court has the authority to affirm, reverse, or modify the hearing officer's decision. Code § 2.2-3006(B). On appeal, however, the hearing officer's decision is only subject to reversal if it is "contradictory to law." Id.; see also Tatum v. Va. Dep't of Agriculture & Consumer Servs., 41 Va. App. 110, 122, 582 S.E.2d 452, 458 (2003); Pound v. Dep't of Game & Inland Fisheries, 40 Va. App. 59, 64, 577 S.E.2d 533, 535 (2003); Va. Dep't of State Police v. Barton, 39 Va. App. 439, 445, 573 S.E.2d 319, 322 (2002). This standard of review is applicable in both the circuit court and the Virginia Court of Appeals. See Pound, 40 Va. App. at 64, 577 S.E.2d at 535 ("[B]ecause the General Assembly granted to the circuit courts only the authority to consider whether the final determination of the hearing officer is 'contrary to law,' we are likewise limited to such review in considering whether the trial court erred in its determination.").

The "contradictory to law" standard of appellate review is unique to cases brought pursuant to the State Grievance Procedure. See Barton, 39 Va. App. at 445, 573 S.E.2d at 322 (noting that Code § 2.2-3006(B) "represents the first and only appearance of the phrase 'contradictory to law' in the Code of Virginia as a standard of appellate review"). "Law," when

- 13 -

used in this context, is limited to "constitutional provision[s], statute[s], regulation[s] or judicial decision[s] . . . ." Id.

Under the circumstances of this case, the circuit court determined that the hearing officer's decision was "contradictory to law" in two respects. First, the circuit court held that, because the notice of termination did not give sufficient notice that the termination was based upon anything other than the fact of the criminal conviction, the hearing officer's decision to terminate Compton for conduct unbecoming violated procedural due process. Second, the circuit court held that the hearing officer exceeded the scope of his statutory authority by modifying the grounds upon which the termination was predicated, thereby violating Code § 2.2-3005. We disagree.

A.

The United States Supreme Court has held that, under certain circumstances, public employees are vested with a constitutionally protected property interest in continued employment. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985) (holding that a state statute providing that an employee "could not be dismissed 'except . . . for . . . misfeasance, malfeasance, or nonfeasance'" created a property interest in continued employment). And, where a public employee has a property interest in continued employment, that employment may not be terminated without adequate procedural safeguards. Id. at 541 (noting that, once the legislature has conferred "'a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest . . . without appropriate procedural safeguards'" (quoting Arnett v. Kennedy, 416 U.S. 134, 167 (1974) (Powell, J., concurring in part) (first alteration in original))). If, however, the public employee has no protected interest in continued employment (i.e., is employed "at will"), the government may

- 14 -

terminate the employee without being constrained by the requirements of procedural due process.

Accordingly, "[w]hen procedural due process respecting deprivation of a property interest is challenged, a two-step inquiry is employed." McManama v. Plunk, 250 Va. 27, 34, 458 S.E.2d 759, 763 (1995) (citing Klimko v. Va. Employment Comm'n, 216 Va. 750, 754, 222 S.E.2d 559, 563 (1976)). "'The first inquiry is whether the interest is a property interest protected by procedural due process guarantees.'" Id. (quoting Klimko, 216 Va. at 754, 222 S.E.2d at 564); see also Mandel v. Allen, 81 F.3d 478, 480 (4th Cir. 1996) ("In order to state a due process claim, appellant 'must first demonstrate that [they] possess[] a "cognizable property interest, rooted in state law" in the lost benefit.'" (quoting Biser v. Town of Bel Air, 991 F.2d 100, 103-04 (4th Cir. 1993) (quoting Scott v. Greenville County, 716 F.2d 1409, 1418 (4th Cir. 1983))) (alterations in original)). If the property interest is constitutionally-protected, the second inquiry "'is whether the procedures prescribed or applied are sufficient to satisfy the due process "fairness" standard.'" McManama, 250 Va. at 34, 458 S.E.2d at 763 (quoting Klimko, 216 Va. at 754, 222 S.E.2d at 564).

Here, neither party contests the issue of whether Compton had a protected property interest in his continued employment with the Department of Corrections.[9] Thus, VDOC was

---

[9] Property interests in continued employment "'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Detweiler v. Va. Dep't of Rehabilitative Servs., 705 F.2d 557, 558 (4th Cir. 1983) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)); see also Garraghty v. Va. Dep't of Corrections, 52 F.3d 1274, 1279 (4th Cir. 1995) ("Determination of whether one has a constitutionally protected property right is a question of state law."). As noted by the Fourth Circuit, "[i]t is [] clear that the [Virginia Personnel] Act creates a property right in continued public employment, for those covered by its provisions." Garraghty, 52 F.3d at 1281; see also Code § 2.2-2905 (listing classifications of employees exempt from the provisions of the Virginia Personnel Act ("VPA"), Code § 2.2-2900 et seq.). Thus, in conjunction with the State Grievance Procedure and the DOC Human Resources Manual, the VPA vests nonprobationary, classified

constrained by the requirements of procedural due process when terminating Compton's employment for cause. And, because VDOC was required to follow procedural due process when terminating Compton's employment, we must next determine whether VDOC provided adequate procedural safeguards under the circumstances of this case.

To satisfy procedural due process requirements, VDOC was required, at minimum, to give Compton: (1) notice of the charges against him, and (2) a meaningful opportunity to respond. Loudermill, 470 U.S. at 546; McManama, 250 Va. at 34, 458 S.E.2d at 763 ("Procedural due process guarantees that a person shall have reasonable notice and opportunity to be heard before any binding order can be made affecting the person's rights to liberty or property."); see also DOC Human Resources Manual § 5-10.14 (providing that, prior to a "disciplinary removal action[], an employee shall be given: (1) an oral or written notice of the offense; (2) an explanation of the agency's evidence in support of the charge; and (3) a reasonable opportunity to respond"). Compton does not contend that he was deprived of a meaningful opportunity to contest his termination, focusing instead on the alleged insufficiency of the written notice.

To pass constitutional muster, the notice given "must be of such nature as to reasonably convey the required information." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). That is, "[t]he means employed must be such as one desirous of actually informing

employees of VDOC with a property interest in continued employment. See Detweiler, 705 F.2d at 560 ("[A] nonprobationary employee [of the Commonwealth of Virginia] has a property interest in continued employment that is created by the state."); Mandel v. Allen, 889 F. Supp. 857, 859 (E.D. Va. 1995) ("Taken together, then, the VPA and the Personnel Manual establish Virginia's personnel system, and they form the basis for the legitimate expectations of government employees in their employment by the state."), aff'd, 81 F.3d 478 (4th Cir. 1996); cf. DOC Human Resources Manual § 5-10.6 (providing that "at will" employees "may be terminated without cause" but setting forth detailed grievance procedures for classified employees).

the absentee might reasonably adopt to accomplish it." Id. at 315. Moreover, when determining the sufficiency of a given notice, courts must consider the realities of that particular case. Id. at 314-15 ("[I]f with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied."); see also Jackson v. W., 14 Va. App. 391, 411, 419 S.E.2d 385, 397 (1992) ("Due process is a flexible concept, and the procedural protections required in a certain instance vary according to the circumstances of the particular case.").

The circuit court held that, to the extent that the written notice was predicated on conduct other than the fact of Compton's conviction, that notice failed to give Compton adequate notice of the charges against him. The circuit court concluded that, by upholding the termination on a ground other than the fact of the criminal conviction, the hearing officer violated Compton's procedural due process rights. We disagree.

The notice charges Compton with violating "DHRM Policy 1.60" and "DOC Procedure 5-10 Standards of Conduct," based on "criminal convictions for illegal conduct . . . *and* conduct unbecoming a Corrections Lieutenant . . . ." (Emphasis added).[10] The notice further states that Compton was "found guilty as charged to verbal assault of Kevin Stapleton," concluding that "[t]his type of *behavior* will not be tolerated." (Emphasis added).

A reasonable reading of the notice indicates that the "behavior" for which Compton was being terminated was not just the fact of the criminal conviction, but for the conduct that underlay that conviction. That is, Compton was on notice that he was being terminated for his

---

[10] The "DOC Procedure 5-10 Standards of Conduct," as set forth in the notice of termination, references the entirety of Chapter 5 of the DOC Human Resources Manual. And, as noted in the chapter, "[t]he offenses listed in this procedure are intended to be illustrative, not all inclusive." DOC Human Resources Manual § 5-10.7(C); see also id. § 5-10.17(B) (noting that the list setting forth the types of behavior that constitute a Group III offense is intended to be illustrative, not exclusive).

"behavior"—not just his "conviction." Thus, the written notice was "timely and reasonably specific," informed Compton "of the subjects to be considered at the hearing," and provided him with "an opportunity to prepare a defense to the [pending] charges." Narrow v. Clear-View Cable TV, Inc., 227 Va. 272, 283, 315 S.E.2d 835, 841 (1984). Accordingly, the notice "fully satisfied [the] due process requirement[] of reasonableness," id., and the hearing officer's decision to terminate Compton for conduct unbecoming did not violate procedural due process.

B.

The circuit court also held that the hearing officer's decision was contradictory to law because the hearing officer modified the stated basis for Compton's termination, thereby exceeding the scope of his statutory authority. We disagree.

Code § 2.2-3005 sets forth the powers and duties of a hearing officer who presides over a grievance hearing brought pursuant to the State Grievance Procedure. Among the delineated powers is the ability to "[t]ake other actions as necessary or specified in the grievance procedure." Code § 2.2-3005(C)(7). Similarly, Code § 2.2-3005.1 provides that the hearing officer "may order appropriate remedies," including alteration "of the agency disciplinary action." Thus, implicit in the hearing officer's statutory authority is the ability to independently determine whether the employee's alleged conduct—if otherwise properly before the hearing officer—justified termination. As we have noted,

> While the hearing officer is not a "super-personnel officer" and should give appropriate deference to actions in agency management that are consistent with law and policy . . . the hearing officer reviews the facts *de novo* . . . as if no determinations had been made yet, to determine whether the cited actions occurred, whether they constituted misconduct, and whether there were mitigating circumstances to justify reduction or removal of the disciplinary action or aggravating circumstances to justify the disciplinary action.

- 18 -

Tatum, 41 Va. App. at 123, 582 S.E.2d at 458 (internal quotations omitted). Thus, "the hearing officer may make a decision as to the appropriate sanction, independent of the agency's decision." Id. at 123, 582 S.E.2d at 459.

Here, then, the hearing officer had the statutory authority to "determine whether the cited actions occurred, whether they constituted misconduct, and whether there were mitigating circumstances to justify reduction or removal of the disciplinary action or aggravating circumstances to justify the disciplinary action." Id. at 123, 582 S.E.2d at 458. As discussed in Part III(A), *supra*, Compton was on notice that his alleged conduct toward Stapleton would be at issue during the grievance hearing. Thus, regardless of the prison warden's previously stated rationale for terminating Compton, the hearing officer was authorized to independently determine whether that conduct occurred and, if so, whether Compton's conduct toward Stapleton justified dismissal. Accordingly, the hearing officer acted within the scope of his statutory authority when holding that, although Compton's conduct was apparently insufficient to sustain a conviction under Code § 18.2-57, that same conduct was, in and of itself, enough to mandate termination.[11]

Because the hearing officer, in concluding that Compton's conduct toward Stapleton was sufficient to justify termination, was acting within the scope of his statutory authority, and

---

[11] We further note that the record does not support the circuit court's decision that the hearing officer "modified" the stated grounds of Compton's termination by upholding his termination on the ground of conduct unbecoming. Specifically, in his written denial of Compton's request for reinstatement, the prison warden noted that, "[a]lthough the court decision was overturned during appeal, the unbecoming conduct outlined in the Written Notice toward a subordinate employee cannot be tolerated." Similarly, in denying Compton's request for reinstatement, the head of the agency also reasoned that, "[a]lthough [Compton's] criminal conviction was overturned during appeal[,] [his] unbecoming conduct clearly undermines [his] effectiveness as a supervisor." The hearing officer's decision was, therefore, entirely consistent with VDOC's consistently articulated rationale for declining to reinstate Compton following his termination for cause.

because Compton was on notice that his conduct was one of the factors leading to his termination, we hold that the hearing officer's decision was not contradictory to law.

## IV.  CONCLUSION

For these reasons, the circuit court erred in determining that the hearing officer's decision was contradictory to law.  Accordingly, we reverse the judgment below and reinstate Compton's termination.

<u>Reversed and final judgment.</u>