COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judges Ortiz and Causey
Argued at Fairfax, Virginia

**PUBLISHED**

TATE MORRIS

v.      Record No. 1130-21-4

GEORGE MASON UNIVERSITY

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER
APRIL 12, 2022

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

J. Caleb Jones (Simms Showers, LLP, on brief), for appellant.

Eli S. Schlam, Assistant Attorney General, Associate University
Counsel, for appellee.

Tate Morris appeals his termination of employment with George Mason University

(GMU).  He contends that numerous errors were made below that require reversing the decision

of the circuit court upholding his termination.  He challenges the resolution of both factual and

legal issues at the hearing-officer and agency-review levels, as well as various procedures

followed by the circuit court in its subsequent review.  For the reasons that follow, we affirm the

decision.

## I.  BACKGROUND[1]

The appellant worked as a law enforcement officer for GMU for over two years.  That

employment came to an end when he was terminated due to his failure to follow workplace

safety protocols related to the COVID-19 pandemic.

---

[1] In reviewing this appeal, we are "bound by the hearing officer's factual findings."
*Taylor v. Va. Alcoholic Beverage Control Auth.*, 70 Va. App. 237, 246 (2019).

The evidence established that in the summer of 2020, GMU adopted its "Safe Return to Campus Plan." The new safety rules necessitated by the global pandemic required employees to complete an online daily COVID-19 health check. Any employee experiencing symptoms consistent with COVID-19 was required to test for the virus and not return to campus until cleared by a medical professional.

While working a shift on October 3, 2020, the appellant "started feeling bad" and went home early. The next day, he completed the online COVID-19 health check. Based on his reported symptoms, the appellant received a "yellow" automated response instructing him to stay off campus until he had clearance from his healthcare provider, his symptoms had improved, and at least ten days had passed since the onset of the symptoms. The appellant did not go to work that day and informed a supervisor that he felt "super congested" and would take a COVID-19 test.

On October 5, 2020, the appellant reported to work for an overtime shift at one of GMU's COVID-19 testing sites without taking a COVID-19 test or obtaining clearance from his healthcare provider. After he completed his shift, a supervisor found out that he had come to work after reporting symptoms and informed him that he could not be at work. She warned that he could not return until he received a negative test and had been cleared by his physician or, absent a test, after ten days had passed. The following day, the appellant took a COVID-19 test. He remained out of work while awaiting the result, which came back "positive" two days later.

GMU issued a disciplinary action notice terminating the appellant's employment. The appellant filed a grievance challenging the termination. A hearing officer with the Office of Employment Dispute Resolution (EDR), a division of the Department of Human Resources Management (DHRM), held the resulting hearing. The hearing officer found that the evidence supported GMU's decision. Dissatisfied with this outcome, the appellant requested

administrative review by EDR. The office's director upheld the hearing officer's decision. The appellant then challenged the decision in the circuit court. The circuit court likewise affirmed the hearing officer's decision. The appeal to this Court followed.

## II. ANALYSIS

"[I]n conjunction with the Virginia Personnel Act, the General Assembly established a system for handling state employee complaints arising in the workplace by enacting the State Grievance Procedure." *Murphy v. Va. Dep't of State Police*, 68 Va. App. 716, 719 (2018) (citation omitted) (quoting *Pound v. Dep't of Game & Inland Fisheries*, 40 Va. App. 59, 63-64 (2003)); *see* Code §§ 2.2-3000 to -3008. This system to address grievances "creates a 'tripartite review procedure'" that sets out the following responsibilities: "(1) the hearing officer is the finder of fact and final authority on factfinding; (2) DHRM and EDR determine whether the hearing officer's ruling . . . compli[es] with personnel policy and grievance procedure[s] respectively; and (3) the [circuit and appellate] courts determine whether the grievance determination is 'contradictory to law.'" *Passaro v. Va. Dep't of State Police*, 67 Va. App. 357, 367 (2017) (quoting *Va. Dep't of State Police v. Barton*, 39 Va. App. 439, 445 (2002)).

Under this framework, in an appeal of a grievance proceeding, a reviewing court, whether it is a circuit or appellate court, may reverse or modify the decision only if it is "contradictory to law." *Osburn v. Va. Dep't of Alcoholic Beverage Control*, 295 Va. 10, 17 (2018) (quoting *Va. Polytechnic Inst. & State Univ. v. Quesenberry*, 277 Va. 420, 429 (2009)). In making this determination, the reviewing court is "limited to ascertaining compliance with constitutional provisions, statutes, regulations, and judicial decisions." *Taylor v. Va. Alcoholic Beverage Control Auth.*, 70 Va. App. 237, 253 (2019) (quoting *Murphy*, 68 Va. App. at 720). These "[q]uestions . . . are reviewed *de novo*." *Id.* (quoting *Osburn*, 295 Va. at 17).

The appellant raises several challenges to the grievance decision. His arguments pertain to certain findings of fact, his due process rights, and the circuit court's handling of the case.

## A. Findings of Fact

The appellant's arguments related to findings of fact concern both the hearing officer's decision and the EDR administrative review.

### 1. The Hearing Officer's Decision

The appellant contends that the hearing officer did not follow the law by "fail[ing] to address the material issues in the case." He suggests that the hearing officer erred by not making a factual finding on every allegation of wrongdoing set out in the written notice. The appellant argues that the failure to resolve all factual questions prejudiced his administrative review and may adversely affect his future employment.

The employer's written notice to the appellant informed him that he had engaged in "Unbecoming/Unprofessional Conduct" and violated the "Safe Return to Campus procedures." The notice also specifically provided that the appellant had:

- failed "to take the mandatory GMU SRTC Training,"
- failed "to familiarize himself with the relevant environmental
  health and safety policies and procedures related to work and/or
  activities on campus" and Covid-19 "protocols,"
- failed "to remain off campus after receiving a yellow status after
  completing the GMU Covid-19 health check," and
- failed "to follow Covid-19 testing guidelines[, which required]
  utilizing the GMU Covid-19 testing after expressing symptoms."

In the written decision, the hearing officer identified one of the issues in the case as "[w]hether [the appellant] engaged in the behavior described in the [w]ritten [n]otice." He found that the appellant had violated one of the employer's COVID-19 safety rules by returning to campus in fewer than ten days after receiving "a yellow email," thereby "creat[ing] a risk of bodily harm by possibly exposing others to COVID-19." Based on this conclusion, the hearing

officer upheld GMU's decision to terminate the appellant's employment. He did not make findings on the other misconduct referenced in the notice.

Code § 2.2-3005.1(C) requires that the hearing officer's written decision "contain findings of fact as to the material issues in the case and the basis for those findings." A material issue is "[a]n issue that must be decided in order to resolve a controversy." *Issue*, *Black's Law Dictionary* (11th ed. 2019). *See generally Jones v. Commonwealth*, 296 Va. 412, 415 (2018) (considering the standard dictionary definition of an undefined statutory term).

The dispositive question here is whether, *after* the hearing officer concluded that the appellant's termination was justified based on one violation, the other allegations of misconduct in the written notice were "material issues in the case" pursuant to Code § 2.2-3005.1(C). The clear answer is that, in light of the hearing officer's conclusion that one basis for termination existed, it was no longer material for him to resolve whether other bases also supported the termination. *See Va. Dep't of Transp. v. Stevens*, 53 Va. App. 654, 662 (2009) (holding that whether one of the employee's two instances of alleged misconduct occurred was irrelevant to the disposition of the case because if one "incident warrant[ed] termination, it [did] not matter whether" the other incident also would). Consequently, the hearing officer complied with his statutory duty to make written findings that resolved the material issues in the case.

## 2. EDR's Administrative Review

The appellant argues that EDR's director, on administrative review, changed a finding of fact made by the hearing officer. Specifically, he contrasts the hearing officer's conclusion that his actions created a "risk" of bodily harm to others with the director's recitation that he created a "threat" of bodily harm to others. The appellant suggests that a "risk," unlike a "threat," does not justify terminating employment. Essentially, he believes that the director changed the

hearing officer's factual finding of a risk to a threat in order to justify the termination. This claim must be reviewed in light of the hearing officer's and the director's entire opinions.

The hearing officer found that the appellant's return to campus in violation of safety protocols "created a risk of bodily harm by possibly exposing others to COVID-19" and therefore supported the termination. On administrative review, consistent with the hearing officer's language, the director described the hearing officer's finding as one that the appellant's "behavior 'created a risk of bodily harm.'" Elsewhere, the review opinion referenced that the appellant's "conduct violated a safety rule and posed a threat of bodily harm to others."

Under DHRM policy, some "acts of misconduct" are of such a "serious nature" that an employer can discharge an employee for a single offense. *See* DHRM, Policies and Procedures Manual, policy 1.60 attach. A (2008 & 2012 rev.) (Group III offense). An example of such an offense is "violating safety rules (where threat of bodily harm exists)." *Id.* The policy does not define "threat." Determining the applicable definition of "threat" is a policy decision within the purview of the agency. *See Passaro*, 67 Va. App. at 370 ("Pursuant to the state employment grievance procedure, the General Assembly has vested review of policy issues involved in such cases in DHRM, and not in the courts." (citing Code § 2.2-3006)).

The terms "threat" and "risk" are both synonymous with "danger." *Roget's International Thesaurus* § 1006.01 (7th ed. 2010); *see A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 627 (2019) (using the phrases "threat of injury to others" and "risk of harm to others" to mean the same thing (quoting *Se. Apts. Mgmt., Inc. v. Jackman*, 257 Va. 256, 260 (1999))). A "threat," as relevant here, is "[a] person or thing that might well cause harm." *Threat, Black's, supra.* Similarly, "risk" is defined in pertinent part as "the chance of injury . . . [,] esp[ecially] the existence and extent of the possibility of harm." *Risk, Black's, supra.* By using both words, the director did not make a factual determination. Instead, he simply construed the definition of

"threat" of bodily harm under the policy to encompass a "risk" of bodily harm. The opinion of EDR on administrative review properly reflects the hearing officer's factual findings.

## B. Due Process

The appellant argues that the decision upholding his termination from employment violated his right to due process. He contends that he did not receive procedural due process because the written notice charged him with violating campus safety rules but, on administrative review, EDR upheld the termination for a violation of DHRM Policy 1.60.

"[U]nder certain circumstances, public employees are vested with a constitutionally protected property interest in continued employment." *Va. Dep't of Corr. v. Compton*, 47 Va. App. 202, 219 (2005) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985)). When "a public employee has a property interest in continued employment, that employment may not be terminated without adequate procedural safeguards."[2] *Id.* at 220. Procedural due process requirements are satisfied when a state employer provides notice of the charges and gives the employee a meaningful opportunity to respond. *Id.* at 221 (citing *Loudermill*, 470 U.S. at 546). "To pass constitutional muster, the notice given 'must be of such nature as to reasonably convey the required information.'" *Id.* at 222 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the written notice charged the appellant with several violations of campus rules and stated that his actions "put members of the community at severe risk." The hearing officer concluded that the appellant's violation of a university safety rule created a risk of bodily harm and justified the termination. On administrative review, the appellant argued that the employer

---

[2] In contrast, if the employment is at will, "the government may terminate the employee without being constrained by the requirements of procedural due process." *Compton*, 47 Va. App. at 220. In the case at hand, GMU does not contest that the appellant had a protected property interest in his continued employment.

could not terminate him for a single act of misconduct because university rules provided that disciplinary action could result only from *repeated* violations. EDR rejected this contention based on its holding that DHRM Policy 1.60, which allows termination for a single serious act of misconduct, controlled. *See* DHRM Manual, *supra*, policy 1.60.

The appellant claims that on administrative review, EDR adopted a different basis for upholding the termination than the grounds set forth in the notice and that this change deprived him of a meaningful opportunity to respond to the allegations. His claim that he did not receive notice adequately informing him that the termination was based on a violation of state Policy 1.60 is factually flawed. The appellant received a written notice dated November 13, 2020, titled "Due Process Notice." It informed him of the university's "intent to issue [him] a Group III Written Notice with termination of employment under State Personnel Policy 1.60, 'Standards of Conduct.'" The notice further provided that "Group III offenses are acts of misconduct of such a severe nature that a first occurrence normally should warrant termination" and include "offenses that . . . endanger others in the workplace." *See* DHRM Manual, *supra*, policy 1.60 attach. A. The appellant also received a second notice dated December 2, 2020, titled "Group III Written Notice."[3] The hearing was held on April 8, 2021. Contrary to the appellant's assertion, the record demonstrates that he was notified that his termination could be upheld for a single offense under DHRM Policy 1.60.

---

[3] That notice reiterated that "Group III offenses are acts of misconduct of such a severe nature that a first occurrence normally should warrant termination."

C.  Procedure in the Circuit Court

The appellant asserts three complaints regarding the procedure followed by the circuit court:  its refusal to take evidence, its limitation on the time allotted to hear argument, and its alleged failure to consider his specific legal arguments challenging the grievance decision.[4]

### 1.  Refusal to Take Evidence

The appellant suggests that the circuit court erred by refusing to hold an evidentiary hearing to allow him to introduce the transcript of the grievance proceeding into evidence.  He argues that it is error that the transcript was not made a part of the record in the circuit court.  *See generally* Code § 2.2-3006(B) (requiring that the "grievance record" be transmitted to the circuit court and that the circuit court "hear the appeal on the record").

The appellant characterizes his argument as a challenge to the circuit court's refusal to take evidence.  However, on review of a grievance proceeding, the record shall be provided to the circuit court by the agency from which the grievance arose, not the employee who initiated the grievance.  Code § 2.2-3006(B) (instructing the agency to "transmit a copy of the grievance record to the clerk of court" upon the filing of a notice of appeal "by either party").  Therefore, the court did not err by refusing to take evidence from the appellant.

---

[4] In support of these first two claims, the appellant's brief cites only the notice of appeal. In support of the third one, he cites the final order, which he endorsed "seen and objected [to]," but he did not note any specific objections on the order.  Rule 5A:20(c) requires the opening brief to include an "exact reference" to the portion of the record or appendix reflecting where the alleged error was preserved below. *Cf. Brooks v. Commonwealth*, 61 Va. App. 576, 580-81 (2013) (*en banc*) (explaining that the purpose of the exact reference requirement is "to spare the Court from having to comb the entire record to determine whether and where the alleged error was preserved").  We assume without deciding that the appellant adequately preserved his arguments related to the circuit court proceeding and decide them on their merits. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (assuming without deciding that the issue was properly before the Court because addressing it on the merits provided the best and narrowest ground for resolution).

To the extent that the appellant complains that the record was incomplete because it did not contain a transcript, the audio recording of the grievance hearing was part of the record in the circuit court. A transcript would simply have presented the same material to the circuit court in a different form. *Cf.* Rules 1:14 (allowing authorization of "electronic . . . means" to preserve the record in a court), 5A:7(a)(7) (providing that when an authorized videorecording from a circuit court proceeding is in the record, this Court "may" also require a transcript). Therefore, the lack of a transcript in the record before the circuit court does not provide a valid basis for complaint.

For these reasons, the circuit court acted appropriately by not taking evidence from the appellant in the form of a transcript of the audio recording of the proceeding that was already in the record.

## 2. Time Allotted for Oral Argument

The appellant complains that the circuit court limited his case review to only thirty minutes of the docket instead of his requested four hours.

A "court has inherent authority to administer cases on its docket." *Shah v. Shah*, 70 Va. App. 588, 593 (2019). Decisions related to the time allowed for argument are "within the sound discretion of the [circuit] court, the exercise of which will not be interfered with by an appellate court in the absence of a clear showing of prejudice to the substantial rights of the complaining party." *Brown v. Peters*, 202 Va. 382, 391 (1961). In the instant case, the circuit court's review was strictly limited to determining whether the grievance decision was "contradictory to law." *See Osburn*, 295 Va. at 17 (quoting *Quesenberry*, 277 Va. at 429). The court heard oral argument and had the case record and the appellant's written pleadings before it. Although the appellant argues that the time limit "seriously hampered" his presentation of his challenges, he has not made a "clear showing of prejudice" to his "substantial rights." *See*

*Brown*, 202 Va. at 391. Consequently, the circuit court did not abuse its discretion by limiting the hearing to thirty minutes.

### 3. Consideration of Arguments

Finally, the appellant argues that the circuit court failed to review the legal challenges that he made to the grievance decision. He comes to this conclusion simply because the circuit court did not specifically outline them in its ruling.

In denying the appeal, the circuit court stated that the case did not "fall into" the "extremely narrow" parameters of the "court's role." The appellant urges us to interpret this statement as an erroneous assertion that the court believed that it did not have the authority to consider any of his arguments.

However, a ruling is entitled to a "presumption . . . [of] correct[ness]," and this Court presumes that a circuit court knew and properly applied the law, "[a]bsent clear evidence to the contrary." *Milam v. Milam*, 65 Va. App. 439, 467 (2015) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977)). The record does not demonstrate that the circuit court ignored the appellant's arguments, and the law does not permit us to assume that it did so. To the contrary, we interpret the court's statement as a reference to the standard of review that it could reverse or modify the grievance decision only if it was "contradictory to law" and, also, a determination that it was not. *See Osburn*, 295 Va. at 17 (quoting *Quesenberry*, 277 Va. at 429). Consequently, we presume that in deciding this case, the circuit court considered and rejected the arguments that the appellant presented. *Cf. Robinson v. Robinson*, 46 Va. App. 652, 667 (2005) (*en banc*) (inferring that a ruling contrary to a party's argument demonstrated a rejection of that argument).

- 11 -

### III.  CONCLUSION

For these reasons, we reject the appellant's arguments.  The hearing officer addressed the issues material to the case.  On administrative review, EDR's director did not change the hearing officer's factual findings.  The appellant received written notice that satisfied due process.  The circuit court decided the case on the record and acted within its reasonable discretion in limiting argument to thirty minutes.  Finally, the record does not demonstrate that the court refused to consider the appellant's contentions.  Consequently, we affirm the decision of the circuit court.

*Affirmed.*