## Salem

COUNTY OF AUGUSTA JAIL

v.

LINDA G. COOK

No. 0515-92-3

Decided April 20, 1993

COUNSEL

William B. Pierce, Jr. (Daniel E. Lynch; Williams, Butler & Pierce, on brief), for appellant.

Thomas W. Dixon, Jr. (Nelson, McPherson, Summers & Santos, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—County of Augusta Jail (employer), appellant, appeals from the February 14, 1992 decision of the Workers' Compensation Commission (commission) awarding Linda G. Cook (Cook), appellee, occupational disease benefits for a heart attack suffered by Cook while employed by employer as a deputy sheriff, but designated a correctional officer. The sole issue is whether the commission erred in determining that the presumption of compensability provided by Code § 65.2-402(B)[1] is applicable to Cook's claim. Finding no error, we affirm the decision of the commission.

The pertinent facts from which this appeal arises are not in dispute. In addition, the parties agree that if the statutory presumption of compensability applies to those facts, Cook is entitled to benefits because no evidence was produced to rebut the presumption. Accordingly, our review is limited to a determination whether the commission erred as a matter of law based on the following facts.

In 1975, employer initially employed Cook as a part-time "dispatcher/matron." Her duties included answering the telephone, dispatching emergency calls, performing clerical work, maintaining jail records, searching female prisoners, and implementing the feeding of female and male prisoners. She had no authority to perform the duties of a deputy sheriff.

Beginning in July 1981, Cook became a "deputy sheriff/corrections officer." She essentially continued with her prior duties in the jail. Although Cook then had the authority of a deputy sheriff, she did not perform the duties of a "law-enforcement" deputy sheriff.

---

[1] Former Code § 65.1-47.1, which was repealed effective October 1, 1991, was in effect at the time of Cook's heart attack. For purposes of this appeal, there is no substantive difference between former Code § 65.1-47.1 and the current Code § 65.2-402(B). Accordingly, we will refer only to Code § 65.2-402(B) in this opinion.

On November 8, 1983, Glenn P. Lloyd was elected Sheriff of Augusta County for a term of office commencing on January 1, 1984. On December 30, 1983, pursuant to Sheriff Lloyd's certification to the Circuit Court of Augusta County that Cook had been appointed by him, Cook was sworn as a "Deputy Sheriff of Augusta County." Thereafter, Sheriff Lloyd designated Cook as a "Deputy Sheriff/Corrections" and assigned her to duties within the county jail. Although her duties were subject to change at any time by Sheriff Lloyd, Cook's duties essentially consisted of "seeing to the care and confinement of jail inmates." Cook did not perform the duties of a deputy sheriff designated as a law-enforcement deputy. Although she had the authority to arrest and serve civil process, she was not issued a weapon, assigned a patrol car, or required to undergo the statutorily required twelve-week course of instruction for law-enforcement deputies established by the Department of Criminal Justice Services. *See* Code § 14.1-73.2. Sheriff Lloyd "consider[ed] Mrs. Cook a deputy sheriff of Augusta County," but he did not encourage her to exercise her authority outside of the jail. In fact, if she had begun to make arrests outside of the jail, she "would either cease making arrests or cease being employed," according to Sheriff Lloyd.

On December 29, 1987, Cook was again sworn as a "Deputy Sheriff/Corrections of Augusta County" and her duties in the jail continued as just related. While on duty at the county jail in this capacity, Cook suffered a heart attack on January 16, 1991.[2]

Code § 65.2-402(B) provides that:

Hypertension or heart disease causing the death of, or any health condition or impairment resulting in total or partial disability of (i) salaried or volunteer fire fighters, (ii) members of the State Police Officers' Retirement System, (iii) members of county, city or town police departments, (iv) sheriffs and *deputy sheriffs*, and (v) city sergeants or deputy city sergeants of the City of

---

[2] In addition to these facts, the record before the commission contained the testimony of Lieutenant Keyser, the Chief Jailer and Cook's immediate supervisor. Lieutenant Keyser described the hazards and stresses of working in the Augusta County jail in close contact with a largely felon population. Physical assaults and abuse by inmates, resolving disputes between inmates, and "being behind locked doors with 110 felons" for eight to ten hour shifts were some of the stressful factors of the employment identified by him. Lieutenant Keyser stated that "[d]ue to extreme stress of working in close contact with felon inmates, as well as the risk of bodily harm, a Deputy Sheriff [of Augusta County] assigned to a corrections job is considered to be just as hard and dangerous as that of a law-enforcement deputy."

Richmond shall be presumed to be occupational diseases, suffered in the line of duty, that are covered by this title unless such presumption is overcome by a preponderance of competent evidence to the contrary.

(emphasis added). In determining that this statutory presumption of compensability is applicable to Cook's claim, the commission concluded that Cook, at the time of her heart attack, was a sworn deputy sheriff and "[t]he fact that law-enforcement deputy sheriffs, i.e., road deputies, have different duties and are perhaps exposed to different risks does not change [Cook's] status nor make her claim any less compensable."

On appeal, employer contends that Cook is not entitled to the Code § 65.2-402(B) presumption of compensability because she was a "correctional" officer, not a "law-enforcement" officer, and did not engage in the "usual law enforcement or police duties" at the time she suffered her heart attack. The essence of employer's contention is that because of her duties Cook was not a deputy sheriff as contemplated by Code § 65.2-402. Implicitly, the commission reached its contrary conclusion from the express language of the statute and rejected the employer's contention that the legislature intended to limit the application of the statutory presumption to deputy sheriffs assigned to law-enforcement duties. We agree with the commission's analysis.

The statutory scheme by which Cook became a "Deputy Sheriff of Augusta County" and was designated a "corrections" officer by Sheriff Lloyd provides the background for determining her status at the time of her heart attack, and is pertinent to an analysis of the term "deputy sheriffs" contained in Code § 65.2-402(B). Specifically, for the reasons that will become apparent, this statutory scheme explains the significance of the specific designations given to deputy sheriffs and, in turn, resolves the issue of entitlement to the Code § 65.2-402(B) presumption of compensability in a particular case. For these reasons and in this context, we review that statutory scheme.

Within the limitations of the state funds appropriated to it, and with the participation and cooperation of sheriffs and the governing bodies of counties and cities, the Compensation Board fixes and determines what constitutes a fair and reasonable budget for the participation of the Commonwealth toward the total annual cost of the office of a particular sheriff. *See* Code § 14.1-51. In order to determine this budget,

the Compensation Board receives annual written requests from the sheriff for the expense of the office, including salaries requested for personnel. *See* Code § 14.1-50. A copy of this request is filed by the sheriff with the governing body of the appropriate county or city. The Compensation Board is required to consider, among other factors, the extent to which the duties of the sheriff's personnel are imposed by actions of the local governing body. In the event of a disagreement, provisions are made for a hearing before the Compensation Board on any objections by the local governing body to the budget allotments.

Within this general framework, the Compensation Board fixes the number of full-time deputies a particular sheriff may appoint who are to be compensated by state funds. *See* Code § 14.1-70.[3] However, the sheriff, rather than the Compensation Board, actually appoints the individual deputy sheriffs. *See* Code § 15.1-48. In addition, once the number of deputies and the aggregate allowance for their compensation are fixed by the Compensation Board for a particular sheriff's office, the sheriff sets the annual salary of each full-time deputy in his employ, except supervisory deputies and those designated as investigators whose salaries are fixed by the Compensation Board. *See* Code § 14.1-73.1:1. The salaries are controlled by Code § 14.1-73.1:2, which requires the salary of a full-time deputy sheriff to be at least equal to the salary of a state "correctional officer," and Code § 14.1-73.1:3, which provides that the salary may not exceed ninety per centum of the salary of the appointing sheriff.

Within this statutory scheme, a sheriff, such as Sheriff Lloyd, must appoint, designate the duties, and fix the salary of a particular full-time deputy, such as Cook, according to the total number of authorized deputies and aggregate funds allotted to him for that purpose by the Compensation Board. Code § 14.1-73.1:1 expressly contemplates that a full-time deputy sheriff will be designated by the sheriff as "primarily a courtroom security officer, a correctional officer or a law-enforcement officer," and that the Compensation Board will be advised of these designations when the sheriff files his budget request pursuant to Code § 14.1-50.

In sum, the statutory scheme by which state funds are made available to a particular sheriff for full-time deputies controls the number of

---

[3] This Code section also expressly recognizes the right of a local governing body to employ a greater number of law enforcement deputies than fixed by the Compensation Board, provided the local governing body pays the total compensation and costs involved.

such deputies available to that sheriff and results from a careful consideration by the Compensation Board of the needs of the sheriff to perform the duties of his office. Those needs are reflected in large part by the sheriff's designation of full-time deputies as primarily courtroom security, correctional or law-enforcement officers.

In the present case, Cook's appointment as "Deputy Sheriff/Corrections of Augusta County" on December 29, 1987 and her identical status at the time of her heart attack on January 16, 1991 resulted from and is determined by this statutory scheme. That scheme provides for the appointment of full-time deputy sheriffs who may be designated as either primarily courtroom security, correctional or law-enforcement officers. The Code does not provide for the appointment of local correctional officers who are not full-time deputy sheriffs. Thus, contrary to employer's contention, Cook was not a correctional officer at the time of her heart attack. Rather, Cook was a duly sworn, full-time deputy sheriff and her designation as primarily a correctional officer does not alter her status as such.[4]

█ As a full-time deputy sheriff, Cook comes within the express term "deputy sheriffs" contained in Code § 65.2-402(B). As used in this statute, this term is not ambiguous; the term is not difficult to comprehend, of doubtful import, or lacking in clearness and definiteness. *See Diggs v. Commonwealth*, 6 Va. App. 300, 301-02, 369 S.E.2d 199, 200 (1988) (en banc). Contrary to employer's contention, nothing in this statute expressly or impliedly limits its application to

---

[4]  Code § 53.1-1 defines a "Correctional officer" as "a duly sworn employee of the Department of Corrections whose normal duties relate to maintaining immediate control, supervision and custody of prisoners confined in any state correctional facility." It also defines "Jail officer" as "a duly sworn employee of a local correctional facility, *except for deputy sheriffs, whose normal duties relate to maintaining immediate control, supervision and custody of prisoners confined in any local correctional facility*." (emphasis added). This Code section specifically provides that the definition of jail officer "in no way limits any authority otherwise granted to a duly sworn deputy sheriff whose duties may include those of a jail officer." Code § 9-169, in pertinent part, defines a "Law-enforcement officer" as any employee of a sheriff's office "who is responsible for the prevention and detection of crime and the enforcement of the penal, traffic or highway laws of this Commonwealth." In addition to these definitions, we recognize that these terms have generally accepted meanings within the criminal justice system. These terms denote the customary duties of a particular officer and the distinctions are generally accepted as mutually exclusive. In the present case, we also recognize that Cook, while having the authority of a law-enforcement officer, would be considered more akin to a correctional officer or jail officer as those terms are generally understood based on her duties in the county jail. However, we do not find that a distinction based on duties has been made in Code § 65.2-402(B) by the legislature.

deputy sheriffs who are primarily law-enforcement officers. The legislature is well aware of the statutory scheme by which full-time deputy sheriffs are appointed and designated as either primarily courtroom security, correctional or law-enforcement officers, pursuant to Code § 14.1-73.1:1, and it has not altered or specifically restricted the term "deputy sheriffs" in Code § 65.2-402(B). Because Code § 65.2-402(B) is clear and unambiguous, "there is no need for further judicial construction." *See First Virginia Banks, Inc. v. McNeil*, 8 Va. App. 342, 344, 381 S.E.2d 357, 358 (1989). Moreover, limiting the application of the statutory presumption, as employer suggests, would result in the commission's rewriting and altering the meaning of the statute to make it more restrictive than the clear and unambiguous term employed by the legislature. The commission properly declined to do so, and we also decline to do so.

In sum, we hold that all full-time, duly sworn deputy sheriffs are entitled to the presumption of compensability contained in Code § 65.2-402(B) regardless of their designation as primarily courtroom security, correctional or law-enforcement officers. For this reason, on the facts of this case, the commission properly awarded Cook occupational disease benefits for the heart attack she suffered while working for employer.

For these reasons, the decision of the commission is affirmed.

*Affirmed.*

Moon, J., and Willis, J., concurred.