COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Humphreys and Clements
Argued by teleconference


JOHN H. POUND
                                            OPINION BY
v.   Record No. 1767-02-3          JUDGE ROBERT J. HUMPHREYS
                                         MARCH 11, 2003
DEPARTMENT OF GAME AND
 INLAND FISHERIES


          FROM THE CIRCUIT COURT OF BATH COUNTY
               Duncan M. Byrd, Jr., Judge

          Charles M. Allen (Michael D. Hancock;
          Goodman, Allen & Filetti, PLLC, on briefs),
          for appellant.

          Guy W. Horsley, Jr., Senior Assistant
          Attorney General (Jerry W. Kilgore, Attorney
          General; Judith Williams Jagdmann, Deputy
          Attorney General, on brief), for appellee.


     John H. Pound appeals a judgment of the trial court, finding

him ineligible to receive benefits pursuant to the Virginia Law

Officer's Retirement System ("VaLORS"), Code § 51.1-211 et seq.

Pound contends that his status as a "special game warden" was

sufficient to place him within the relevant provisions of Title

51.1, which create and govern VaLORS.  For the reasons that

follow, we affirm the judgment of the trial court.

## I.  Background

Pound began work for the Department of Game and Inland Fisheries in November of 1971, as a wildlife biologist.  In that role, Pound was responsible for various tasks, including maintaining certain fish and wildlife populations and analyzing biological data.

On February 11, 1972, Pound was appointed as a "special game warden" by the former Director of the DGIF.  As evidence of his appointment, Pound was given a certificate stating that he was thereby commissioned as a special game warden, with statewide authority, "so long as [he was] employed" by DGIF.  Pound was also given another certificate, stating that he had taken the oath required of such officers, and a "wallet-sized" identification card stating that he was "a qualified Special Game Warden" and that his "authority" as such would expire "with termination of employment."  Accordingly, Pound's employment duties increased with his new "appointment," permitting him to carry a firearm and to enforce the hunting and fishing laws of the State of Virginia.

During the years that followed, Pound and other special game wardens were directed by their supervisors to cease their law enforcement activities for various periods of time, while DGIF reviewed various training and certification requirements.  After each occasion, the special game wardens were told to resume their law enforcement activities.

-

In May of 1991, however, Pound received a memorandum from Gary Spiers, his regional manager, which stated as follows, in relevant part:

> [E]ffective immediately you are no longer authorized to perform the duties of a Special Game Warden.  Your Job Description and performance Planning and Evaluation form will both be revised to reflect this change in work tasks and duties and performance expectations.

(Emphasis added).  Pound acknowledged that Spiers gave him the memorandum during a face-to-face meeting and explained to him that DGIF was "looking at doing away with some of the law enforcement activities on national forest property, and that's why they had chose [sic] to do away with [his] appointment at that time."  Pound further acknowledged that Spiers collected all of the DGIF "law enforcement equipment" that had been issued to him, in addition to his special game warden identification card.  Subsequently, in 1994, DGIF "discontinued the special game warden appointments for [all other DGIF] employees due to the costs in time and money that would be required for these part-time officers."

Nevertheless, after that time, Pound and other employees who had acted as former special game wardens, were asked, on occasion, by DGIF to aid the regular game wardens in enforcement activities. The individuals were also directed to report any violations they observed to the regular game wardens for further investigation. In addition, DGIF reissued pistols to those individuals who had

-

formerly acted as special game wardens, including Pound, and set up a program that would allow those individuals the option of purchasing their pistol upon retirement.  However, in issuing the pistols to the "filed personnel" DGIF emphasized that the pistols were issued for "non-law enforcement activities."

In 1999, the General Assembly passed VaLORS (which became effective on October 1, 1999), which provides enhanced retirement benefits for certain "law officers."  See Code § 51.1-211 et seq. After its enactment, Pound, who was still employed with DGIF as a Wildlife Biologist Assistant, requested to be included in the VaLORS retirement plan arguing that because he was a special game warden, he was an "employee," as defined by the legislation governing VaLORS.  DGIF denied Pound's request, contending that his status as a special game warden did not bring him within the meaning of "employee" pursuant to the VaLORS enactment.

Pound ultimately appealed DGIF's denial and received a hearing, pursuant to the State Grievance Procedure, before the Department of Employment Dispute Resolution.  See Code § 2.2-3001 et seq.  After a hearing on the merits, the hearing officer found that Pound was not entitled to benefits under VaLORS as a special game warden.  Specifically, the hearing officer found that Pound was a "Special Game Warden" "in title only and not in substance." Further, the hearing officer held that based upon the title of the statutory enactment, as well as its language, the legislative intent of the Act was that it apply only to individuals whose job

-

duties require them to enforce criminal or quasi-criminal laws. Thus, because the hearing officer found that Pound's position at the time of VaLORS' enactment required no such duties, nor gave him any such authority, he did not fall within the definition of "employee" as stated by VaLORS and envisioned by the legislature.

Pound appealed the hearing officer's decision to the Circuit Court of Bath County, pursuant to Code § 2.2-3006(B).  After hearing arguments on the issue and reviewing legal memoranda filed by each party, the trial court affirmed the decision of the hearing officer, finding that "because [Pound] was not authorized to engage in law enforcement activities on October 1, 1999, the effective date of VaLORS[,] . . . [Pound] is not covered."

## II.  Analysis

On appeal, Pound contends the trial court erred in affirming the decision of the hearing officer, finding that he was not entitled to benefits pursuant to VaLORS.  Specifically, Pound argues that he retained his status as a special game warden even after he was directed by his supervisor to discontinue his law enforcement duties and that accordingly he is an "employee" within the meaning of VaLORS because he is a "game warden" as defined by the VaLORS plan.

We first note that in conjunction with the Virginia Personnel Act, Code § 2.2-2900 et seq, the General Assembly established a system for handling state employee complaints arising in the workplace by enacting the State Grievance Procedure.  Code

-

§ 2.2-3000 et seq.; Virginia Dept. of Envtl. Quality v. Wright, 256 Va. 236, 238, 504 S.E.2d 862, 862-63 (1998). Pursuant to Code § 2.2-3006 of that statutory scheme, a party may appeal a final decision to the appropriate circuit court "on the grounds that the determination is contradictory to law." After a hearing of the appeal "on the record," the court may "affirm the decision or may reverse or modify the decision." Code § 2.2-3006. Such determinations of the circuit court may be appealed to this Court, pursuant to Code § 17.1-405(1), granting any aggrieved party the ability to appeal "[a]ny final decision of a circuit court on appeal from . . . a grievance hearing decision issued pursuant to § 2.2-3005." Code § 17.1-405(1). Thus, because the General Assembly granted to the circuit courts only the authority to consider whether the final determination of the hearing officer is "contrary to law," we are likewise limited to such review in considering whether the trial court erred in its determination. See Virginia Department of State Police v. Barton, 39 Va. App. 439, 573 S.E.2d 319 (2002); see also Shuler v. Virginia Employment Commission, 14 Va. App. 1013, 1016-17, 420 S.E.2d 257, 259 (1992) (holding that where statutory language plainly provides the process governing judicial review of determinations, VAPA does not govern such review). "We review . . . statutory interpretations and legal conclusions de novo." Rollins v. Commonwealth, 37 Va. App. 73, 79, 554 S.E.2d 99, 102 (2001).

-

The General Assembly created VaLORS in 1999 and ordered that it become effective as of October 1, 1999. See 1999 Va. Acts, ch. 585. Code § 51.1-217(B), as enacted by the legislature, provided for a retirement allowance of $8,952 per annum (until the "member's" 65th birthday), payable in addition to the "member's" normal retirement benefits. Id.[1] However, to qualify as a "member" of VaLORs, the statute requires "membership in the Retirement System." Code § 51.1-212. Pursuant to Code § 51.1-213, "Membership in the Retirement System [is] compulsory for all employees." As used in Chapter 2.1 of Title 51.1, "[e]mployee"

> means any (i) member of the Capitol Police Force as described in § 30-34.2:1, (ii) campus police officer appointed under the provisions of Chapter 17 (§ 23-232 et seq.) of Title 23, (iii) game warden in the Department of Game and Inland Fisheries appointed under the provisions of Chapter 2 (§ 29.1-200 et seq.) of Title 29.1, (iv) special agent of the Department of Alcoholic Beverage Control appointed under the provisions of Chapter 1 (§ 4.1-100 et seq.), (v) law-enforcement officer employed by the Virginia Marine Resources Commission as described in § 9.1-101, (vi) correctional officer as the term is defined in § 53.1-1, and including correctional officers employed at a juvenile correction facility as the term is defined in § 66-25.3, (vii) any parole officer appointed pursuant to § 53.1-143, and (viii) any commercial

---

[1] The additional allowance amount has been adjusted by the Board of Trustees of the Virginia Retirement System, pursuant to the direction of the legislature, and is currently $9,264.

-

                vehicle enforcement officer employed by the
                Department of State Police.

Code § 51.1-212 (emphasis added).

        Code § 29.1-200(A) provides the Director of the DGIF with the

authority to "appoint regular and special game wardens <u>as he may</u>

<u>deem necessary to enforce the game and inland fish laws</u>."

(Emphasis added).  Code § 29.1-205 provides as follows, in

relevant part:

                All game wardens are vested with the
                authority, upon displaying a badge or other
                credential of office, to issue a summons or
                to arrest any person found in the act of
                violating any of the provisions of the
                hunting, trapping, inland fish and boating
                laws.

                <u>Regular game wardens</u> are vested with the
                same authority as sheriffs and other
                law-enforcement officers to enforce all of
                the criminal laws of the Commonwealth.

                Any <u>special game warden</u> shall have general
                police power while performing his duty on
                properties owned or controlled by the Board.

(Emphasis added).

        Pound argues that because Code § 51.1-212 uses the term "game

warden," versus "regular game warden" or "special game warden" as

distinguished in Code § 29.1-205, the General Assembly clearly

intended the term to apply to any "game warden" appointed pursuant

to Chapter 2 of Title 29.1.  Accordingly, as Pound contends he was

still a special game warden at the time of the enactment of the

statute, he argues he falls within the definition of an "employee"

under VaLORS.

                                    -

We agree with Pound's contention that the language of Code § 51.1-212, and its related counterparts, is unambiguous and thus, there is no need to resort to statutory construction. See City of Richmond v. Confrere Club, 239 Va. 77, 80, 387 S.E.2d 471, 473 (1990) ("[W]hen a statute is clear and unambiguous, its plain meaning must be accepted without resort to extrinsic evidence or to the rules of construction. Legislative intent is determined from the plain meaning of the words used."). Indeed, the phrase "any" "game warden," as used in the statute is neither "difficult to comprehend, of doubtful import, [n]or lacking in clearness and definiteness." County of Augusta Jail v. Cook, 16 Va. App. 247, 252, 430 S.E.2d 546, 549 (1993).

However, we disagree with Pound's contention that his particular status as a "special game warden" brought him within the parameters of the statute. Pursuant to the requisite standard of review here, we are bound by the hearing officer's factual determination that Pound was a "special game warden" in "title only" at the time VaLORS was enacted. Nevertheless, Pound conceded during the hearing on his grievance that in May of 1991, DGIF effectively revoked (or "[did] away with") his authority to "enforce the game and inland fish laws," of Virginia. Code § 29.1-200. Indeed, Pound's regional manager, acting on behalf of his employer, the Director of DGIF, provided Pound with a written memorandum stating that he was "no longer authorized to perform" such duties and told him that DGIF had chosen to "do away" with

-

his "appointment" to perform such duties at that time. Furthermore, the regional manager collected items Pound possessed as indicia of any such authority, including his gun, his badge and his special game warden identification card. Thus, as the hearing officer recognized, after May of 1991, Pound had no power to act as either a "game warden" and/or a "special game warden," pursuant to the authority and duties set forth in Code § 29.1-205.[2] Moreover, Pound's job duties, performance plans and performance evaluations were specifically amended by DGIF to reflect this change.

As stated above, Code § 29.1-200, governing the appointment of special game wardens, gives the Director of the DGIF the authority to appoint "special game wardens . . . to enforce the game and inland fish laws," of Virginia. It does not permit the Director to appoint special game wardens for other purposes, nor does it permit the Director to maintain appointments for other purposes. Accordingly, the reference in Code § 51.1-212 of VaLORS to "any" "game warden in the Department of Game and Inland Fisheries appointed under the provisions of Chapter 2 (§ 29.1-200

---

[2] Indeed, even though DGIF subsequently directed Pound, and others who had acted as special game wardens prior to 1994, to assist regular game wardens in law enforcement on an occasional basis and/or to report any violations observed, Pound and the others were given the directive to do so only in conjunction with the regular game wardens, who possessed the requisite power and authority to enforce the game and inland fish laws of Virginia.

-

et seq.) of Title 29.1," clearly dictates that only "special game wardens" with law enforcement duties and authority, fall within the definition of "employees" within the context of VaLORS.

This is markedly contrary to the situation reflected in County of Augusta Jail v. Cook, as relied upon by Pound. Cook, 16 Va. App. at 252-53, 430 S.E.2d at 549. In Cook, we found that no language in Code § 65.2-402, the statute pertaining to presumptions of compensability for specified conditions incurred by those engaged in certain occupations, "expressly or impliedly limit[ed] its application to deputy sheriffs who [were] primarily law-enforcement officers." Id. Thus, regardless of whether Pound retained the title of "special game warden" at the time VaLORS was enacted, his title as such did not operate to bring him within the definition of an "employee" under VaLORS.

The Supreme Court of Virginia has consistently held that statutes "must be given a rational interpretation consistent with [their] purposes, and not one which will substantially defeat [their] objectives." City of Chesapeake v. Gardner Enterprises, 253 Va. 243, 247, 482 S.E.2d 812, 815 (1997) (citing Mayor v. Industrial Dev. Auth., 221 Va. 865, 869, 275 S.E.2d 888, 890 (1981); Norfolk Southern Ry. Co. v. Lassiter, 193 Va. 360, 364, 68 S.E.2d 641, 643 (1952)); see also Tabb v. Commonwealth, 98 Va. 47, 56-57, 34 S.E. 946, 949 (1900) ("A provision of a section of a statute ought not to receive a mere literal interpretation, when it would contravene the intention of the Legislature apparent from

-

the other sections and provisions thereof, but the words are to be expanded or qualified to effectuate the intention.").  Consistent with this policy, we find that the Act governing VaLORS, by its plain language, clearly evinces the legislature's intent that it apply only to those "game wardens" described as "employees" pursuant to Code § 51.1-212, who are cloaked with both the authority, and the duty, to enforce the game and inland fish laws of the Commonwealth.

As found by the hearing officer, the record here demonstrates that since May of 1991, Pound has had no authority to enforce any such laws, nor has the enforcement of such laws been a part of his regular duties in his capacity as a wildlife biologist with DGIF. Therefore, we affirm the trial court's judgment, determining that the hearing officer's decision, denying Pound's request for benefits pursuant to VaLORS was not "contradictory to law."

Affirmed.