COURT OF APPEALS OF VIRGINIA


Present:    Judges Benton, Clements and Beales
Argued at Richmond, Virginia


BENJAMIN H. RICE, SR. AND
  KATHLEEN W. RICE

                                                              OPINION BY
v.        Record No. 0226-06-2              JUDGE RANDOLPH A. BEALES
                                                          DECEMBER 28, 2006
BENJAMIN H. RICE, JR. AND
  V. CAMEILLE CROMER


                FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
                          Von L. Piersall, Jr., Judge Designate

                Adrienne George-Eliades; Scott D. Landry, Guardian *ad litem* for the
                minor child (The Eliades Law Firm, P.L.L.C.; Duty, Duty & Landry,
                on briefs), for appellants.

                Lawrence D. Diehl for appellee V. Cameille Cromer.

                No brief or argument for appellee Benjamin H. Rice, Jr.


        Benjamin H. Rice, Sr. and Kathleen W. Rice, paternal grandparents, appeal the denial of

their petition for visitation with their granddaughter.  The grandparents present the following issues:

1) they argue that the trial court erred in its "application of [Code] § 20-124.3:1 [by] not allowing

the testimony of Wendy Hall, LCSW"; 2) they claim that the trial court abused its discretion "in not

ordering visitation [by the grandparents with their grandchild] to be in the best interest of the child";

and 3) they argue that the trial court erred in its "application of the best interests [of the child]

standard in denying appellants' petition for visitation."  Cameille Cromer, mother, cross-appeals the

trial court's use of "the best interests of the child standard rather than the actual harm to the child

test."  Each party asks this Court for attorneys' fees associated with the appeal.  For the following

reasons, we affirm the trial court's ruling and, consequently, decline to rule on mother's cross-appeal issue. We deny each party's request for attorneys' fees.

I.

BACKGROUND

The child is the daughter of V. Cameille Cromer and Benjamin H. Rice, Jr. Mother and father had been previously granted a final divorce. A portion of the divorce proceedings involved the cessation of father's visitation and overall contact with the child due to allegations of sexual abuse of the child by her father. In an administrative hearing, father was found to have committed a level 1 sexual abuse act against the child in the grandparents' home. That finding was subsequently affirmed in two administrative appeals, and the matter was pending in circuit court when this appeal was filed.

On February 9, 2004, grandparents filed a petition for visitation with the child. They were granted supervised visitation by a Consent Order on October 29, 2004. Thereafter, the juvenile court granted the grandparents visitation every other weekend for a period of eight hours. Mother appealed the decision to the Prince George Circuit Court, which held a *de novo* visitation hearing on October 25, 2005.

As a preliminary matter, the trial court heard argument on whether or not to grant mother's motion *in limine*, which moved to exclude the testimony of the child's former therapist, Wendy Hall. Mother argued that Code § 20-124.3:1 barred testimony by a therapist on behalf of or against a parent without written consent of the parent, which neither mother nor father here had given. The guardian *ad litem* argued against granting the motion *in limine*, proffering that Hall's testimony would consist of "impressions about [the] child and statements that may have been made by the parent." The trial court sustained the motion, noting that Hall was brought in to testify by and for a party to the suit (grandparents) and thus could "not testify on behalf or

against a parent or any of the parent's adult relatives, if she is called as a mental health provider." The trial court also restricted the testimony of another therapist, Cara Campanella, who was called to testify by the mother.

Next, the parties presented argument on which legal standard the trial court should employ in its analysis of the visitation petition: the best interests of the child standard found in Code § 20-124.3 or the actual harm standard articulated in Williams v. Williams, 256 Va. 19, 501 S.E.2d 417 (1998), and Griffin v. Griffin, 41 Va. App. 77, 581 S.E.2d 899 (2003). The trial court held the best interests of the child standard applied under the facts of this case.

Testimony from paternal grandmother, from mother, and from experts dealt with the child's tendency to twitch and "self-masturbate," which was also termed "self-stimulating behavior." This behavior intensified and resulted in distraction at school and the inability to complete homework.

Mother explained that the level of masturbation would "get[] better" in the period between the visits with grandparents, "but usually the Sunday or Monday afterwards, she becomes completely dysfunctional again. . . . You can't even . . . get her to sit still and do her homework." The child stopped the behavior completely during a four-week period when the grandparents were out of town, but, according to mother, she immediately resumed the behavior when the visitation resumed. Grandmother stated that she initially noticed the behavior in spring 2003, but she did not advise mother of it.

Dr. Leigh Hagan, an expert in forensic psychology, observed and tested the child, noting that the psychological testing used "measures that are well-recognized, they're accepted in the field and they have been subject to peer review." Hagan opined that the child "is a psychologically healthy child, with the exception being the encapsulated area of family pathology, family maladjustment, which . . . derives from the original trauma which gave rise to

the founded complaint." Hagan further stated that, as a result of the father's alleged abuse, certain stimuli associated with the grandparents' visits caused the child to resume the self-stimulating behavior, and "the stimuli . . . associated with that original trauma will more likely than not be reawakened for her if there is Court-ordered visitation." Hagan concluded that any loss or separation the child might feel from not visiting the grandparents would be counter-balanced by "protection or insulation from situations that are the same or similar to that resembling those factors surrounding the original trauma."

Don Wilhelm, a clinical social worker, had been previously ordered by the court to perform an assessment on the child and was accordingly admitted "as an expert in the area of attachment." The assessment was performed at Wilhelm's home, with the child and both maternal and paternal grandparents present. Wilhelm did not observe "any excessive anxiety [n]or [did] the child attempt[] to present a false sense of self," leading him to conclude that no "red flags" were present.

Willie Cromer, Jr., the maternal grandfather, recounted that the child's meeting with Mr. Wilhelm "was supposed to be an hour." He explained that Wilhelm only spent between twenty to twenty-five minutes with the child, that Wilhelm twice excused himself to eat during the session, and that Wilhelm spent ten minutes in the front yard conversing with his wife while waiting for a child to arrive on the school bus. He estimated the entire session lasted less than one hour.

The parties stipulated that the father supports the grandparents' petition for visitation.

The trial court denied grandparents' petition, noting its decision was based on the statutory best interest "factors and all the evidence and all the comments." In support of its ruling, the trial court made extensive findings, including the following:

> In this case, we have one parent, who definitely says I don't
> want to be ordered to let my child visit the grandparents, I fully

- 4 -

intend for them to have a relationship with the paternal grandparents, but I want to be able to do it when I think it is appropriate and proper, as opposed to the grandparents who say the child gets along well with us, there is no problem when the child is with us, and I have no question about that. I feel certain the child does get along well. I am very impressed with the grandmother, she makes a very good witness, she is very brief in her answers and very straight and direct, she comes right to the point, and I think in probably dealing with problems, child rearing problems, she is very competent and capable of responding appropriately, as one of the witnesses pointed out, to problems of dealing with child's behavior.

But does that mean that they should be allowed to demand from the mother, who is the custodian of this child at this time, the sole custodian, I mean insofar as the father has no visitation or contact, should they be allowed to demand that the mother, over her objection and against her best judgment, to have this child come and visit them. That's what is before me.

The trial judge also found "some evidence that, after th[e] visitation, there is some exacerbation in the child's problem behavior," which was an increased level of masturbation. Therefore, and noting the fact that "this child is suffering at this time and has problems and difficulties," the court held that "the mother has the right to make the decision about how things are handled with this child." Also, the judge stated that he "thought Dr. Hagan's testimony was helpful . . . very well spoken and a man with impressive credentials," but continued, "I was not impressed with Mr. Wilhelm . . . not so much with the description that Reverend Cromer . . . gave, but with Mr. Wilhelm's own testimony, he seemed not to know a lot, which are things we would like for him to be able to give answers to."

The trial judge also held that he was not denying all contact between the grandparents and the child. The judge specifically stated that he would enter an order, if necessary, which would allow cards, letters, and phone calls between the child and her grandparents. Mother was also required to give information and notice to the grandparents so that they could attend the child's "events, soccer games, school plays or whatever might come about."

- 5 -

ANALYSIS

A.

Grandparents assert the trial court erred in interpreting Code § 20-124.3:1 and in not allowing therapist Wendy Hall to testify. On brief, they "contend that impressions of how therapy has gone, completion of goals, treatment, over-all mental health, emotional needs or observations of the child are not barred . . . because statements of that nature may not necessarily enure to the benefit or detriment of either parent or his or her relatives."

Code § 20-124.3:1(B) states in pertinent part:

> In any case in which custody or visitation of a minor child is at issue pursuant to § 20-124.2, whether in a circuit or district court, a mental health care provider licensed in the Commonwealth may not be required to testify on behalf of or against a parent or any of the parent's adult relatives, and may do so only with the advance written consent of the parent.

In Schwartz v. Schwartz, 46 Va. App. 145, 616 S.E.2d 59 (2005), where the therapist was "a mental health care provider for the children," id. at 149, 616 S.E.2d at 61, we interpreted the language and legislative history of Code § 20-124.3:1. There, we held:

> The language in Code § 20-124.3:1 is plain. . . . Subsection (B) provides that the mental health care provider "may not be required to testify on behalf of or against *a parent* or any of the parent's adult relatives" without "the advance written consent of *the parent*." . . . In addition, Code § 20-124.3:1 provides no exception permitting the trial court to order disclosure for the broad purpose of determining the best interests of the child.

Id. at 156-58, 616 S.E.2d at 65-66 (quoting Code § 20-124.3:1) (emphasis in original). We also noted that "[n]othing in the language of Code § 20-124.3:1 *as enacted* requires that the parent must have been a patient in order to invoke the privilege." Id. at 156, 616 S.E.2d at 65 (emphasis added).

While we recognize that the mother in <u>Schwartz</u> desired to specifically exclude "testimony about her[self]," we hold that the rationale of that case and this Court's interpretation of the plain language in Code § 20-124.3:1 still apply to this matter. In this case, the mental health therapist (Hall), who was hired by the mother and called to testify by the grandparents, is necessarily testifying "on behalf of or against" one or both of the parents or an adult relative of either parent (i.e., the grandparents), since they are all parties to this dispute. Moreover, a portion of the guardian *ad litem*'s proffer – that the therapist would testify as to "impressions about [the] child and statements that may have been made by the parent" – suggests that some of Hall's testimony would, in fact, directly relate to a parent.[1]

Here, the trial court did not err in its interpretation of the statute and its subsequent ruling on the motion *in limine*. In fact, the trial judge, in articulating his decision, quoted verbatim the language of the statute that compels his holding. The trial court noted that grandparents offered Hall's testimony, and that fact made it likely that the substance of the testimony would be adverse to mother's position in the case. Thus, we hold the trial court did not err in restricting Hall's testimony; both our decision in <u>Schwartz</u> and the plain meaning of Code § 20-124.3:1 compel this result.[2]

---

[1] In his response to the motion *in limine*, the guardian *ad litem* argues, "Ms. Hall's opinions, impressions, statements regarding sessions and information relating to discussions with the respondent, Ms. Cromer, address the subject matter that is before the Court . . . ." This representation leads us to conclude that at least part of Hall's testimony would recount conversations that the mother had wished to remain confidential.

[2] Code § 20-124.3:1(B) also provides that "the court may order a licensed mental health care provider to testify on matters specifically related and limited to suspicion of an abused or neglected child as defined in § 63.2-100 of the Code of Virginia." Neither party argued, at trial or on appeal, that this provision of the statute applies to the facts of this case.

B.

Questions 2 and 3, as phrased by appellants, are: 2) did the trial court abuse its discretion "in not ordering visitation [by the grandparents with their grandchild] to be in the best interest of the child"; and 3) did the trial court err in its "application of the best interests [of the child] standard in denying appellants' petition for visitation." Both questions present substantially the same issue. Thus, we address the two together, noting specific arguments that appellants make within each.

i.

For purposes of this section, we assume without deciding that the trial court applied the proper legal standard, the best interests of the child. Code § 20-124.3 lists ten factors that a trial court "shall consider" when "determining best interests of a child for purposes of determining custody or visitation arrangements." "Although the trial court must examine all factors set out in Code § 20-124.3, 'it is not required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999) (quoting Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995)) (additional citation omitted). "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Id.

"Where, as here, a court hears evidence *ore tenus*, its findings are entitled to the weight of a jury verdict, and they will not be disturbed on appeal unless plainly wrong or without evidence to support them." Gray v. Gray, 228 Va. 696, 699, 324 S.E.2d 677, 678 (1985). See also Denise v. Tencer, 46 Va. App. 372, 397, 617 S.E.2d 413, 426 (2005). Moreover, it is well established that "[o]n appeal, we view the evidence in the light most favorable to the prevailing party, granting that party the benefit of any reasonable inferences." Id.

In reaching a decision in this matter, the trial court specifically discussed his evaluation of the experts' testimony. For example, the judge found Dr. Hagan "helpful," while noting that

- 8 -

Mr. Wilhelm "seemed not to know a lot." Such an evaluation rests solely with the trial judge, as "the credibility of witnesses and the weight to be accorded their testimony is a matter exclusively within the province of the trier of fact." Yopp v. Hodges, 43 Va. App. 427, 439, 598 S.E.2d 760, 766 (2004).

Here, the trial court properly considered the Code § 20-124.3 factors and the evidence presented in the case. Taken in the light most favorable to mother (the party who prevailed in the trial court), and as the trial court found, there exists "some evidence that, after . . . visitation, there is some exacerbation in the child's problem behavior."[3] Consequently, the trial court determined that giving "the mother . . . the right to make the decision about how things are handled with this child" was in the best interests of the child because "everybody, including the guardian [*ad litem*], says the child is suffering at this time and has problems and difficulties."

We cannot say this ruling by the trial court was plainly wrong or without evidentiary support. Accordingly, and given our standard of review on this issue, we hold that the trial court did not abuse its discretion, and we, therefore, affirm its denial of appellants' petition for visitation.

ii.

On brief, grandparents also argue that the trial court "place[d] too much weight in consideration of Dr. Hagan's opinions and findings" and moreover, that Hagan's "testimony should have been excluded."

---

[3] We note that the record certainly does not establish that the grandparents were the cause of the child's masturbation. Indeed, the trial judge favorably commented upon the grandparents' child-rearing abilities and noted that the grandparents have cooperated in the mother's efforts to seek counseling for the child.

We further note that the trial judge's decision in this case was made in the light of a finding in an administrative proceeding that the father, who had lived in the grandparents' residence, had sexually abused the child. That finding is the subject of an appeal to this Court in a separate proceeding.

After a lengthy discussion on brief about the admissibility of expert testimony, appellants clarify that argument as follows: "Dr. Hagan's testimony should have been excluded by the court because his opinions were founded on assumptions that have an insufficient factual basis and because he failed to consider all the variables that could influence his opinion." In addressing that claim, we again note "'that the trier of fact ascertains [an expert] witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony.'" Piatt v. Piatt, 27 Va. App. 426, 435, 499 S.E.2d 567, 571 (1998) (quoting Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) (additional citation omitted)). Thus, to the extent that appellants argue the trial court improperly weighed Dr. Hagan's testimony, we hold that the trial court did not abuse its discretion in that regard.

C.

Mother maintains on cross-appeal that the trial court erred by applying the best interests of the child standard rather than the actual harm standard articulated in Williams and Griffin. However, our holding above renders a decision on that issue unnecessary because the trial court denied appellants' petition under the more lenient of the two standards. Thus, even if this Court were to determine the trial court erred by not first finding actual harm, the result in this case would not be different.

Mother, nonetheless, asks this Court to address the issue and hold any error, if found, harmless. We decline the invitation to do so, in accordance with this Court's long-standing reluctance to issue an advisory opinion. See Logan v. Commonwealth, 47 Va. App. 168, 171 n.3, 622 S.E.2d 771, 773 n.3 (2005) (*en banc*) (noting "our reluctance to issue what amounts to an 'advisory opinion' on an inessential subject" (quoting Craddock v. Commonwealth, 40 Va. App. 539, 551 n.1, 580 S.E.2d 454, 461 n.1 (2003))).

III.

ATTORNEYS' FEES

Both parties request an award of attorneys' fees. As we held in O'Loughlin v.

O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996):

> The rationale for the appellate court being the proper forum to
> determine the propriety of an award of attorney's fees for efforts
> expended on appeal is clear. The appellate court has the
> opportunity to view the record in its entirety and determine
> whether the appeal is frivolous or whether other reasons exist for
> requiring additional payment.

Here, we find no reason to award either party attorneys' fees under this standard and accordingly

deny each party's request for the same.

IV.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. Each party remains

responsible for its attorneys' fees.

Affirmed.

Clements, J., concurring, in part, and dissenting, in part.

I concur with sections II(B), II(C), and III of the majority opinion. I disagree, however, with the majority's conclusion in section II(A) that "our decision in <u>Schwartz</u> [v. Schwartz, 46 Va. App. 145, 616 S.E.2d 59 (2005),] and the plain meaning of Code § 20-124.3:1 compel" us to affirm the trial court's decision not to permit the paternal grandparents and the guardian *ad litem* for the child to elicit testimony from Wendy Hall, the child's former therapist, regarding her observations and impressions of the child during therapy. Indeed, for the reasons that follow, I would hold that the trial court misconstrued Code § 20-124.3:1 and <u>Schwartz</u> and improperly limited Hall's testimony as a result. Accordingly, I respectfully dissent from section II(A) of the majority's opinion.

Code § 20-124.3:1 provides as follows:

> A. Notwithstanding any other provision of law, in any case in which custody or visitation of a minor child is at issue pursuant to § 20-124.2, whether in a circuit or district court, the records concerning a parent, kept by any licensed mental health care provider and any information obtained during or from therapy shall be privileged and confidential.

> B. In any case in which custody or visitation of a minor child is at issue pursuant to § 20-124.2, whether in a circuit or district court, a mental health care provider licensed in the Commonwealth may not be required to testify on behalf of or against a parent or any of the parent's adult relatives, and may do so only with the advance written consent of the parent. If the mental health care provider testifies, such testimony shall be limited to the custody or visitation case in question, and the provider's records and notes regarding that parent shall be admissible in the court proceeding. However, the court may order a licensed mental health care provider to testify on matters specifically related and limited to suspicion of an abused or neglected child as defined in § 63.2-100 of the Code of Virginia.

> C. Nothing in this section shall supercede the provisions of § 63.2-1509 of the Code of Virginia related to the required reporting of suspicion of an abused or neglected child.

- 12 -

D. This section shall not apply to mental health care providers who have conducted or are conducting an independent mental health evaluation pursuant to a court order.

The parties agree that, because neither parent consented to Hall's testimony, Code § 20-124.3:1(B) applies to limit the admission of Hall's testimony in this case. They disagree, however, as to the extent of that limitation.

Mother contends Code § 20-124.3:1(B) precludes the admission of all of Hall's testimony. Hall's testimony, mother asserts, was offered by the grandparents and was thus "intended to be favorable to [their] position." As such, mother argues, it was necessarily "in derogation or against" her "and her opposition to grandparent visitation." Mother concludes that, because the entirety of the testimony was "against" her, the statute completely bars its admission. This interpretation, mother asserts, is required by this Court's decision in Schwartz.

Joined by the child's guardian *ad litem*, the grandparents contend Code § 20-124.3:1(B) was not intended to completely prohibit all of Hall's testimony, but only that testimony that was specifically about mother or father or their adult relatives. They argue that "nothing in the language of . . . Code § 20-124.3:1 or this Court's holding in Schwartz bars" Hall's testimony about the child herself. Thus, they conclude, "the trial court should have heard . . . Hall's testimony regarding her impressions and observations of [the child]."

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." James v. Commonwealth, 18 Va. App. 746, 753, 446 S.E.2d 900, 904 (1994). "By definition, when the trial court makes an error of law, an abuse of discretion occurs." Bass v. Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000). The issue as to what extent Code § 20-124.3:1(B) precludes the admission of Hall's testimony in this case presents a question of law, which is to be reviewed *de novo*. See Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d

- 13 -

922, 925 (2006) (holding that, "[b]ecause statutory interpretation presents a pure question of law, it is subject to de novo review" on appeal).

In interpreting a statute, we endeavor "'to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature.'" Colbert v. Commonwealth, 47 Va. App. 390, 394, 624 S.E.2d 108, 110 (2006) (quoting Jones v. Rhea, 130 Va. 345, 372, 107 S.E. 814, 823 (1921)). Additionally, "we have a duty, whenever possible, 'to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" Oraee v. Breeding, 270 Va. 488, 498, 621 S.E.2d 48, 52 (2005) (quoting Virginia Elec. & Power Co. v. Bd. of County Supervisors, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983)). In doing so, we "'look to the whole body of [a statute] to determine the true intention of each part.'" Id. (alteration in original) (quoting McDaniel v. Commonwealth, 199 Va. 287, 292, 99 S.E.2d 623, 627 (1957)).

Moreover, "while legislative intent 'must be gathered from the words used, . . . unreasonable or absurd results must not be reached by too strict adherence to literal interpretation.'" Colbert, 47 Va. App. at 395, 624 S.E.2d at 110 (quoting Buzzard v. Commonwealth, 134 Va. 641, 653, 114 S.E. 664, 667 (1922)). Thus, "[a] provision of a section of a statute ought not to receive a mere literal interpretation, when it would contravene the intention of the [l]egislature apparent from the other sections and provisions thereof, but the words are to be expanded or qualified to effectuate the intention." Tabb v. Commonwealth, 98 Va. 47, 56, 34 S.E. 946, 949 (1900), cited with approval in Pound v. Dep't of Game and Inland Fisheries, 40 Va. App. 59, 68, 577 S.E.2d 533, 537 (2003).

Here, mother essentially asks this Court to assign a literal interpretation to the term "on behalf of or against" in Code § 20-124.3:1(B) and, in so doing, set out a per se rule prohibiting

the admission in a custody or visitation proceeding of all testimony by a mental health care provider engaged to counsel a child, unless the child's parents give their advance written consent to such testimony. She argues that such testimony, by virtue of the fact that it is being offered at such a proceeding, necessarily has to be either "on behalf of or against a parent or any of the parent's adult relatives" and is thus specifically prohibited under Code § 20-124.3:1(B). I am of the opinion that, when the statute's subsections and provisions are read together, Code § 20-124.3:1(B) prohibits a mental health care provider who has been engaged to counsel a child from testifying about the child's parents and their adult relatives, but not from testifying about the child him- or herself.

Although not a model of legislative clarity, Code § 20-124.3:1 was clearly intended, in the context of cases like this, to protect and promote the rights and interests of Virginia's children by making sure those children who need mental health therapy are not deprived by their parents of the benefits of such therapy out of fear that information about the parents revealed during therapy could be used against them in a custody or visitation proceeding.[4] To that end, Code § 20-124.3:1(A) provides that the therapist's "records concerning a parent" are "privileged and confidential." Code § 20-124.3:1(B) provides that, if the therapist is allowed to testify, his or her "records and notes regarding that parent" may be admitted into evidence. Neither section of the statute makes any reference to the therapist's notes, records, or information regarding the child. Moreover, Code § 20-124.3:1(B) creates a specific exception to the statute's prohibition against evidence from the mental health therapist regarding the parents when that evidence is "related . . . to suspicion of an abused or neglected child." This statutory language illustrates the

---

[4] Plainly, the statute was also enacted to allow parents with mental health concerns to obtain therapy from a mental health care provider without fear that the information learned about them during therapy would be used against them in a custody or visitation proceeding. The statute also protects parents in visitation or custody proceedings from having to defend themselves against claims made about them during therapy by their children.

- 15 -

legislature's intent that the statute apply to bar testimony by the child's therapist about the child's parents and the parents' adult relatives, but not about the child. Clearly, testimony by the child's therapist about the child would not have the same potential chilling effect on the parents' willingness to obtain and participate in therapy for the child as such testimony about the parents would.

Here, the child's guardian *ad litem* proffered the testimony that he and the grandparents would have elicited from Hall, the child's former therapist, had she been permitted to testify. In relevant part, Hall would have testified regarding her observation of the child's behavioral problem and the therapeutic process employed to treat that problem. Hall would have further testified that, "over the term of therapy[, the child] had stabilized quite a bit," having achieved "75% progress on all [therapeutic] goals." In addition, Hall would have testified that, "at the time of the last [session,] no clinical criteria evidenced any severe difficulty" and that "progress was made" on the child's ability to identify and express her feelings regarding the past abuse she had suffered and its effect on her life. This testimony relating to the child's diagnosis and treatment and the therapist's impressions and observations of the child's therapy was strictly about the child and would not have included statements about the parents or their adult relatives.[5]

Conversely, the testimony at issue in Schwartz was strictly about a parent. In that case, the children's court-appointed mental health therapist testified at the contempt proceeding that the children reported in their sessions that the children's mother denigrated the children's father in their presence at home. Schwartz, 46 Va. App. at 149-50, 616 S.E.2d at 62. The therapist further testified that the mother denigrated the father in the presence of the children during joint therapy sessions with the children and the mother. Id. at 150, 616 S.E.2d at 62. Relying on that

---

[5] Mother concedes in her brief that "the intended proffered evidence related to the core issue of visitation and the child's current mental health status."

testimony, the trial court found the mother had violated the parties' consent order prohibiting such behavior. Id. at 150-51, 616 S.E.2d at 62.

On appeal in Schwartz, the mother claimed the trial court erred under Code § 20-124.3:1(B) by permitting the father to offer the therapist's "testimony *about her*." Id. at 155, 616 S.E.2d at 64 (emphasis added). The father contended the statute applied "only when the parent is the patient." Id. Rejecting the father's claim that "the parent must have been a patient in order to invoke the privilege," we held that the contempt proceeding was part of a "larger suit . . . [that] included custody and visitation" and that "the trial court's admission of [the therapist's] testimony *about mother*, given without her written consent and over her express objection, was error." Id. at 155 n.3, 158, 616 S.E.2d at 64 n.3, 66 (emphasis added).

It is clear, therefore, notwithstanding mother's assertion to the contrary, that our decision in Schwartz is not inconsistent with the conclusion that Code § 20-124.3:1(B) prohibits the admission of testimony by a mental health therapist that is specifically about the parents or their adult relatives, but not testimony that is about the child. Accordingly, because the testimony at issue in this case, unlike in Schwartz, is about the child, and not the child's parents or their adult relatives, I would hold that its admission was not prohibited by Code § 20-124.3:1(B).

To hold otherwise would result in the unreasonable and absurd situation that occurred in this case. As noted by the majority, the grandparents and the child's guardian *ad litem* called as witnesses at the visitation proceeding on October 25, 2005, two mental health care providers who had evaluated the child. One was Hall, the child's former therapist who counseled the child from December 2003 until July 2005. All but a small portion of her testimony was excluded under Code § 20-124.3:1.[6] The other mental health care provider was Don Wilhelm, a licensed clinical

---

[6] Hall was permitted to testify that she was engaged by mother to counsel the child and that she served as the child's therapist from December 2003 until July 2005.

- 17 -

social worker who performed a one-time assessment of the child pursuant to a court order in September 2004. As mother points out in her brief, that assessment consisted of Wilhelm observing the child with the grandparents for approximately twenty minutes. Wilhelm testified that the child did not exhibit "excessive anxiety" or "attempt[] to present a false sense of self" during that period of observation. In denying the grandparents' petition for visitation with the child, the trial judge commented that he "was not impressed with Mr. Wilhelm." Such a situation—where the court-appointed evaluator was permitted to testify about the child under Code § 20-124.3:1 but the child's long-time therapist was not—reflects an interpretation of the statute that, in my view, does not comport with the statute's overall remedial objective of protecting and promoting the rights and interests of children. Likewise it has the undesirable effect of hampering the court's ability, in matters of child custody and visitation, to determine and further the child's best interests. See generally Kogon v. Ulerick, 12 Va. App. 595, 596, 405 S.E.2d 441, 442 (1991) ("In matters concerning custody and visitation, the welfare and best interests of the child are the 'primary, paramount, and controlling consideration[s].'" (quoting Mullen v. Mullen, 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948))); Commonwealth ex rel. Gray v. Johnson, 7 Va. App. 614, 617-18, 376 S.E.2d 787, 788 (1989) ("The strong public policy of this Commonwealth posits that the paramount concern where children are concerned are their best interests.").

For these reasons, I would reverse the trial court's decision excluding Hall's testimony about the child and remand for reconsideration.